UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SETH FREED WESSLER,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF JUSTICE and UNITED STATES MARSHALS SERVICE,

Defendants.

CIVIL ACTION
DOCKET NO:_________

COMPLAINT FOR INJUNCTIVE RELIEF

**PRELIMINARY STATEMENT**

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, for injunctive and other appropriate relief, seeking the immediate processing and release of agency records requested by Plaintiff from defendants the United States Department of Justice ("DOJ") and the United States Marshals Service ("USMS"). It is brought by journalist Seth Freed Wessler to further his investigative work into the federal criminal justice system and, more particularly, into the circumstances in which tens of thousands of federal pretrial detainees in USMS custody are held on a daily basis in state, local and private prisons and jails with varying levels of federal oversight.

2. In 2015, an average of 52,000 people were in the custody of the USMS on a daily basis, and the majority of those individuals were held in state or local prisons or jails or private prison facilities under a contract or intergovernmental agreement (IGA) with the USMS. According to an investigation by the DOJ Inspector General (DOJ-IG), however, USMS oversight of the facilities in which those individuals await an adjudication of the charges against them is inconsistent and often "cursory" and, as a result, problems that are identified routinely go

uncorrected. Moreover, little is known about the conditions faced by pretrial detainees in USMS custody, including the medical care they receive and the terms of the contracts or agreements that govern their incarceration in state, local or private prison facilities.

3. In this action, Plaintiff Wessler seeks records pertaining to state and local prison facilities as well as privately-operated detention facilities utilized by the USMS to house federal pretrial detainees in its custody. Specifically, he seeks information and records regarding deaths, suicides, violence, disturbances and other major incidents in facilities holding USMS detainees, including but not limited to the identity of the individuals who have died and the time they spent in USMS custody, the causes of their deaths and any action taken as a result. He additionally seeks the disclosure of all records regarding the oversight and monitoring activities of the USMS, including but not limited to cure notices to state/local and private facilities and any objections received in response to such cure notices; medical reimbursements paid by the USMS to state/local and private facilities; and information and records pertaining to a February 20, 2015 riot at the Willacy County Regional Detention Center in Willacy County, Texas.

4. There is a significant amount of public interest in the government's practices with respect to the detention and treatment of federal prisoners, and the outsourcing of detention to state, local and private facilities in particular. Disclosure of the records sought is essential to ensure that a fully informed debate about this matter is possible.

**JURISDICTION AND VENUE**

5. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(E)(iii). The

Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

**PARTIES**

6. Plaintiff Seth Freed Wessler is a New York-based investigative journalist. He is currently a reporter for the Investigative Fund at the Nation Institute and a senior fellow at the Schuster Institute for Investigative Journalism of Brandeis University. From April 2014 to April 2015, he was a writer for NBCNews.com. From Summer 2013 to Summer 2014, he was a visiting scholar at New York University's Arthur L. Carter Journalism Institute. Prior to that appointment, he was a staff reporter for Colorlines.com, an award-winning online magazine. Mr. Wessler has received numerous honors for his reporting including a Carey Institute Residency, a Hillman Prize, the Reporting Award from NYU, and a Casey Medals honorable mention. In May 2014, Mr. Wessler became a Soros Justice Media Fellow, a fellowship he was awarded for the express purpose of reporting on "federal prisons used exclusively to hold noncitizens with criminal convictions." Mr. Wessler has contributed to outlets including *The Nation*, *This American Life*, The Center for Investigative Reporting, *ProPublica* and *Elle Magazine*. He has appeared on NPR's Fresh Air, MSNBC, WNYC and many other outlets to discuss his reporting.

7. Defendant DOJ is a Department of the Executive Branch of the United States Government and is an agency within the meaning of 5 U.S.C. § 552(f)(1). Defendant USMS is a component of DOJ.

## FACTS

### I. THE PROMINENT ROLE OF THE USMS IN DETAINING FEDERAL PRISONERS.

8. The U.S. Marshals Service is responsible for the detention of federal criminal detainees from the time they are taken into federal custody until they are acquitted, arrive at a Federal Bureau of Prisons (BOP) facility to serve a custodial sentence following conviction, or are otherwise ordered released from custody. The USMS provides housing, medical care and transportation to the prisoners in its custody throughout the United States and its territories. In 2015, the USMS spent a total of $1.45 billion detaining approximately 52,000 people in its custody on a daily basis. *Fact Sheet: Prisoner Operations*, UNITED STATES MARSHALS SERVICE, (last visited Feb. 10, 2017), https://www.usmarshals.gov/duties/factsheets/prisoner_ops.pdf.

9. The size of the prisoner population in USMS custody on a daily basis has more than doubled since the mid-1990s. *See* OFFICE OF THE INSPECTOR GEN., U.S. DEP'T OF JUSTICE, AUDIT REPORT 07-26, OVERSIGHT OF INTERGOVERNMENTAL AGREEMENTS BY THE UNITED STATES MARSHALS SERVICE AND THE OFFICE OF THE FEDERAL DETENTION TRUSTEE ii (2007), *available at* https://oig.justice.gov/reports/USMS/a0726/final.pdf.

10. However, the USMS does not itself own or operate correctional facilities. Instead, approximately 60 percent of the federal prisoners in USMS custody are held in state or local facilities pursuant to intergovernmental agreements, 20 percent are held in privately-operated facilities and 20 percent are held in BOP facilities. *See Fact Sheet: Prisoner Operations*, *supra*.

**II. INADEQUATE OVERSIGHT OF PRIVATE, STATE AND LOCAL PRISON FACILITIES HOUSING FEDERAL PRETRIAL DETAINEES**.

11. Little is known about the USMS and its practices with respect to oversight and monitoring of non-federal facilities that house USMS detainees. A 2013 DOJ-IG audit reviewed the oversight efforts of the USMS and the Office of the Federal Detention Trustee (OFDT), which was created by Congress in 2001 to centralize the management of federal detention resources, and found that inspections suffered from inconsistency and duplication of effort, varied widely in terms of thoroughness and were undermined by a lack of follow-up to correct deficiencies. *See* OFFICE OF THE INSPECTOR GEN., U.S. DEP'T OF JUSTICE, AUDIT REPORT 13-06, AUDIT OF THE U.S. DEPARTMENT OF JUSTICE'S OVERSIGHT OF NON-FEDERAL DETENTION FACILITY INSPECTIONS (2013) ("DOJ-IG 2013 AUDIT"), *available at* https://oig.justice.gov/reports/2013/a1306.pdf.

12. In one of its most troubling findings, the DOJ-IG revealed that the OFDT's inspection practices were far more rigorous than those of the USMS.

13. Although the USMS is the primary Justice Department entity responsible for housing federal pretrial detainees, the OFDT took responsibility for negotiating agreements with a small number of private, state and local facilities to hold federal detainees. In 2006, the OFDT established the Quality Assurance Review (QAR) Program to inspect, on an annual basis, each facility with which it had negotiated an agreement as well as a subset of the facilities that held federal pretrial detainees pursuant to an agreement with the USMS. Inspections under the QAR Program were conducted by a team comprised of a project manager and four subject-matter experts, lasted approximately three days and cost approximately $50,000 each. DOJ-IG 2013 AUDIT 3-4, 8.

14. The USMS requires each of its 94 districts to conduct annual inspections of each non-federal facility actively in use in each district. USMS inspections were normally performed by a single entry-level Deputy U.S. Marshal and completed in approximately two hours. Such inspections were considered a "collateral" duty for the Deputy U.S. Marshal who performed them. DOJ-IG 2013 AUDIT 2, 8.

15. A senior USMS official acknowledged to the DOJ-IG that USMS reviews are "cursory" and "did not generally require USMS personnel to test a facility's procedures and protocols." DOJ-IG 2013 AUDIT 8.

16. The DOJ-IG also found that poor coordination between the OFDT and the USMS resulted in duplication and inconsistency. Of the 142 facility inspections conducted by the OFDT during the five-year audit period, the USMS had inspected the same facility in the same fiscal year 70 times. DOJ-IG 2013 AUDIT 16-17.

17. The results of those duplicate inspections revealed that the USMS and the OFDT often diverged in their evaluation of the same facility in the same year. In 51 of the 70 duplicate inspections noted above, the USMS and the OFDT came to different conclusions about the facility's compliance with detention standards. Not surprisingly given the "cursory" investigations performed by the USMS, there were 32 instances in which the USMS found a facility to be compliant while the OFDT found deficiencies and only four instances in which the USMS uncovered deficiencies that the OFDT did not. DOJ-IG 2013 AUDIT 18.

18. The USMS also failed to accomplish its goals with regard to the frequency of inspections. The DOJ-IG identified 63 instances in which the USMS failed to perform an annual inspection of an IGA facility with an average daily population of at least 200 inmates, including 13 unique facilities that went without an inspection by USMS for two consecutive years at some

point during the audit period. In 34 of those 63 instances, the OFDT also did not conduct an inspection of that facility in that year. DOJ-IG 2013 AUDIT 16, 16 n.19.

19. The USMS likewise failed to resolve deficiencies that were identified during the inspection process. When the OFDT inspected USMS facilities, it produced a report to USMS headquarters, and the USMS was responsible for ensuring that the facility in question took appropriate steps to address deficiencies identified by the OFDT. DOJ-IG 2013 AUDIT 20.

20. The OFDT requested that USMS officials follow up with the facility in question within 30 days. However, despite reminders from the OFDT, the USMS often failed to follow up on identified deficiencies. The OFDT, in turn, was forced to cease its follow-up efforts "[w]hen the OFDT determined that their efforts to provoke action by the USMS had become futile." DOJ-IG 2013 AUDIT 20.

21. The DOJ-IG found 32 instances in 2009 and 2010 in which the OFDT "closed" reviews that had identified deficiencies requiring follow up due to the USMS's "non-responsiveness." DOJ-IG 2013 AUDIT 20.

22. Further, in at least some cases, deficiencies ignored by the USMS posed significant safety concerns. For example, and as is particularly pertinent to this matter, in 2010 the OFDT identified a facility under agreement with the USMS in which cells designated for holding suicidal detainees had not been modified to prevent suicide attempts, and noted that a federal detainee had committed suicide in that facility in 2009. DOJ-IG 2013 AUDIT 21.

23. The USMS failed to request that the facility create a corrective action plan, or otherwise address the problem. In 2011, an inmate committed suicide in that facility, although not in one of the cells identified as problematic by the OFDT, prompting an additional review

that resulted in the correction of a problem that had been identified by the OFDT more than a year earlier. DOJ-IG 2013 AUDIT 21-22.

24. The USMS "explained" to the DOJ-IG that it "enters into agreements, not contracts, with state and local facilities" and therefore "cannot tell state and local governments how to operate their facilities." As a result, and additionally because the OFDT's findings are based on a "more thorough evaluation instrument," the USMS "does not always ensure jail facilities adequately address" the deficiencies that OFDT identifies. DOJ-IG 2013 AUDIT 22.

25. On October 1, 2012, the OFDT was merged into the USMS. DOJ-IG 2013 AUDIT 24. Thus, with the responsibility for the inspection of non-federal detention facilities holding tens of thousands of federal prisoners resting exclusively with the USMS, the need for transparency and accountability is clear.

**III. PLAINTIFF'S APRIL 3, 2016 FOIA REQUESTS**

26. On April 3, 2016, Plaintiff submitted a FOIA request to defendant USMS seeking: (1) information on all facilities where USMS detainees are held or have been held between 2010 and 2016, including the operator, type of operating agreement, per diem paid by USMS, agreements with other federal agencies, security level, age and gender breakdown of detainees, arresting/detaining agency, daily population (as an average for each month), total number of people held in each facility each year, length of detention and medical reimbursement payment information; (2) all records pertaining to the monitoring and oversight of all facilities where USMS detainees are held, including but not limited to cure notices, records related to responses/objections by facility operators and corrective actions or recommendations (including fines or fee deductions) associated with cure notices or other deficiencies identified in the course

of monitoring/oversight activities; (3) records pertaining to standards, rules, and all other policies that state and local facilities, private facilities and other facilities that hold USMS detainees are required to follow, broken down by type of facility; (4) the total number of suicide attempts for each facility each year; (5) all after action reports, critical incident reports or records related to investigations, whether performed by USMS, state/local authorities, or another party or entity, pertaining to disturbances, deaths, violence or any other major incident in a facility holding detainees in USMS custody; (6) medical reimbursements paid by the USMS to non-federal facilities; (7) USMS correspondence and records pertaining to Willacy County (Texas), Management and Training Corporation (MTC), the Willacy County Regional Detention Center and the Willacy riot on February 20, 2015; and (8) a complete list of each person that has died while in USMS custody, including name, gender, date of birth, date and location of death, country of origin, citizenship status, charge, agency of arrest/charge, time spent in USMS custody (broken down by facility) and detailed cause of death, and, for each such person, the detainee's full medical record and all grievances, complaints or other requests, whether filed by that individual or an advocate, attorney, relative or other party, related to the detainee's incarceration or health. *See* Ex. A.

27. In conjunction with his FOIA request, Plaintiff applied for expedited processing because, as a journalist "primarily engaged in disseminating information" about a pressing concern of public interest, the information and records sought were urgently needed to inform the public about an actual or alleged Federal Government activity. 5 U.S.C. § 552(a)(6)(E)(i); 28 C.F.R. § 16.5(e).

28. In addition, Plaintiff sought a waiver of any applicable fees as a "representative of the news media" on the grounds that disclosure of the requested public records is in the public

interest and is "likely to contribute significantly to public understanding of the operations or activities of the government" and "not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); 28 C.F.R. §§ 16.10(c)(1)(i), 16.10(d)(1), 16.10(k)(1).

29. In a letter dated June 23, 2016, long after the statutory deadline to respond had passed, *see* 5 U.S.C. § 552(a)(6)(A)(i) (requiring agencies to notify a requester of a decision within 20 days of the request), defendant USMS acknowledged receipt of Plaintiff's request and, because the request would "require a search in another office" and therefore constituted "unusual circumstances" pursuant to 5 U.S.C. § 552(a)(6)(B)(i)-(iii), purported to "extend[] the time limit to respond . . . beyond the ten additional days provided by the statute." Although already beyond the specified period by the time of its letter, defendant USMS "estimated that it may take an additional thirty working days beyond the FOIA 30-day time period to process" Plaintiff's request. *See* Ex. B. Defendant USMS has not, however, provided any further response to Plaintiff's request.

30. On November 22, 2016, undersigned counsel notified USMS by letter of its intention to file suit unless it processed Mr. Wessler's FOIA request by December 15, 2016.

31. To date, Mr. Wessler has not received a determination regarding either his FOIA request or his requests for expedited processing and a fee waiver. Defendant USMS has accordingly failed to make a determination within the time limits imposed by statute. *See* 5 U.S.C. § 552(a)(6)(C)(i) (administrative remedies deemed exhausted if the agency "fails to comply with the applicable time limit provisions").

## IV. RELEASING THE REQUESTED DOCUMENTS WILL SERVE THE PUBLIC INTEREST.

32. Though the conditions faced by federal pretrial detainees in USMS custody in state, local and private prison facilities remain shrouded in mystery, news reports suggest there may be problems lurking beneath the surface. *See, e.g.*, Elizabeth Murray, *Vermont Inmate Dies in Hospital*, BURLINGTON FREE PRESS, (Sept. 18, 2016), http://www.burlingtonfreepress.com/story/news/local/vermont/2016/09/18/vermont-inmate-dies-hospital/90627204/; Pierce Greenberg, *Prisoner's Complaint Leads to Federal Investigation, Oversight of Robertson Co. Jail Facility*, NASHVILLE CITY PAPER (May 5, 2013), http://nashvillecitypaper.com/content/city-news/prisoners-complaint-leads-federal-investigation-oversight-robertson-co-jail-facili.

33. The DOJ-IG report also demonstrates that this lack of transparency masks a troubling incentive for the USMS to ignore problems that arise in non-federal facilities. When the OFDT expanded its QAR Program to encompass smaller IGA facilities, the USMS responded with a July 2010 letter that "stated that such an expansion would cause a significant negative impact on the USMS's daily prisoner operation." The reason for that negative impact, according to the USMS, was that the USMS often lacks "alternate options" and therefore "cannot remove federal detainees every time a facility is found to be deficient based upon the more in-depth OFDT inspection." DOJ-IG 2013 AUDIT 22-23. Thus, greater public awareness may be necessary to provide the impetus for increased oversight.

34. Press reports, moreover, demonstrate that there is significant public interest in for-profit prison companies and privately-managed detention facilities, which hold approximately 20 percent of the detainees in USMS custody on a daily basis. *See* Seth Freed Wessler, *Special Investigation: Dying in Private Prisons*, THE NATION,

https://www.thenation.com/special/private-prison-deaths/ (last visited February 10, 2017); Shane Bauer, *My Four Months as a Private Prison Guard*, MOTHER JONES (July/August 2016), http://www.motherjones.com/politics/2016/06/cca-private-prisons-corrections-corporation-inmates-investigation-bauer.

35. The Justice Department, arguably at least in part as a result of investigations undertaken by Plaintiff, recently directed the Bureau of Prisons to phase out – and ultimately end completely – its use of privately-operated prisons. *See* Memorandum from Sally Q. Yates, Deputy Attorney General., U.S. Dep't of Justice, to Acting Director, Federal Bureau of Prisons, "Reducing Our Use of Private Prisons" (August 18, 2016), *available at* https://www.justice.gov/opa/file/886311/download.

36. This important step notwithstanding, the USMS has not signaled that it is willing to reduce or eliminate its use of private prison facilities to house pretrial detainees in its custody. Nor does the Justice Department's recent change in policy apply to the USMS. There remains, therefore, great need for oversight with respect to private prison facilities used by the USMS.

37. Furthermore, the public's attention is focused like never before on the plight of incarcerated individuals, and on the ability of prisons and jails of all sizes to operate in a humane, safe and efficient manner, whether or not they are privately-operated facilities or for-profit companies. *See, e.g.*, Michael Schwirtz, Michael Winerip & Robert Gebeloff, *The Scourge of Racial Bias in New York State's Prisons*, N.Y. TIMES (Dec. 3, 2016), https://www.nytimes.com/2016/12/03/nyregion/new-york-state-prisons-inmates-racial-bias.html; Kent Faulk, *DOJ investigating Violence and Rape Inside Alabama Men's Prisons*, AL.COM (October 6, 2016), http://www.al.com/news/birmingham/index.ssf/2016/10/doj_launches_investigation_of.html.

38. The foundation of our democracy is an informed populace. Without access to information or documents regarding the treatment of federal pretrial detainees, including those in the custody of the USMS but held in facilities operated by state or local governments or private companies, the nation is deprived of its best mechanism for holding officials accountable and creating the impetus for a change in policies. Access to information is, in sum, necessary for the functioning of a democracy with regard to this, or any other issue. The release of the requested records will allow the public to judge for itself the legitimacy or appropriateness of the government's policies.

## CAUSES OF ACTION

### First Cause of Action: Violation of the FOIA for Failure to Expedite the Processing of Plaintiff's Request.

39. Plaintiff repeats and realleges paragraphs 1-38.

40. Defendants' failure to expedite the processing of Plaintiff's request violates FOIA, 5 U.S.C. § 552(a)(6)(E), and defendants' own regulations promulgated thereunder.

### Second Cause of Action: Violation of the FOIA for Failure to Make Promptly Available the Records Sought by Plaintiff's Request.

41. Plaintiff repeats and realleges paragraphs 1-38.

42. Defendants' failure to make promptly available the records sought by Plaintiff's request violates FOIA, 5 U.S.C. § 552(a)(3)(A).

### Third Cause of Action: Violation of the FOIA for Failure to Release Records Sought by Plaintiff's Request.

43. Plaintiff repeats and realleges paragraphs 1-38.

44. Defendants' failure release to records sought by Plaintiff's request violates FOIA, 5 U.S.C. § 552(a).

**Fourth Cause of Action: Violation of the FOIA for Failure to Timely Respond to Plaintiff's Request.**

45. Plaintiff repeats and realleges paragraphs 1-38.

46. Defendants' failure to timely respond to Plaintiff's request violates the FOIA, 5 U.S.C. § 552(a)(6)(A)(i), and defendants' own regulations promulgated thereunder.

**Fifth Cause of Action: Violation of the FOIA for Failure to Supply a Fee Waiver.**

47. Plaintiff repeats and realleges paragraphs 1-38.

48. Defendants' failure to grant a fee waiver violates FOIA, 5 U.S.C. § 552(a)(4)(A)(iii).

**REQUESTED RELIEF**

WHEREFORE, Plaintiff prays that this Court:

a) order Defendants immediately and expeditiously to process Plaintiff's FOIA request and to disclose the requested records, including all responsive records created between the date of the request's submission (April 3, 2016) and the date of production and waiving all processing fees;

b) award Plaintiff costs and reasonable attorneys' fees incurred in this action; and

c) grant such other relief as the Court may deem just and proper.

Respectfully Submitted,

/s/ Lawrence S. Lustberg
Lawrence S. Lustberg, Esq.
J. David Pollock, Esq.
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102-5310
(973) 596-4500

Dated: February 10, 2017