UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SETH FREED WESSLER,

                        Plaintiff,

- versus –

UNITED STATES DEPARTMENT OF
JUSTICE and UNITED STATES
MARSHALS SERVICE,

                       Defendants.

No. 17 Civ. 976 (SHS)

## **DECLARATION OF KATHERINE DAY**

Pursuant to 28 U.S.C. § 1746, I, Katherine Day, declare the following to be a true and correct statement of facts:

1. I am an Associate General Counsel and the Freedom of Information/Privacy Act ("FOI/PA") Officer of the United States Marshals Service (USMS), assigned to the Headquarters, Office of General Counsel, in Washington, D.C. I am familiar with the procedures followed by the USMS in responding to requests made pursuant to the provisions of the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Privacy Act of 1974, 5 U.S.C. § 552a ("Privacy Act" or "PA"), for information maintained in the records and files of the USMS. The USMS Headquarters Office of General Counsel is responsible for processing all FOIA/PA requests made to any USMS office located throughout the United States pursuant to USMS policy.

2. My job responsibilities include responding to requests and litigation filed under both FOIA and the Privacy Act, reviewing FOIA/PA requests for access to records located in this

office and the ninety-four USMS Field Offices, reviewing correspondence related to requests, reviewing searches conducted in response to requests, locating responsive records, and preparing USMS responses to ensure that determinations to withhold or release such responsive records are made in accordance with FOIA, PA, and DOJ regulations, 28 C.F.R. §§ 16.3 et seq. and §§ 16.40 et seq.

3. I have the authority to release and withhold records requested under the FOIA/PA. The statements I make in this Declaration are based upon my review of the official files and records of USMS, my own personal knowledge, and information acquired by me through the performance of my official duties. I have reviewed the Complaint which this Declaration addresses.

4. Due to the nature of my official duties, I am familiar with the procedures followed by USMS in responding to the FOIA request made to USMS by plaintiff Seth Freed Wessler, as described further below.

**The Request**

5. By letter dated April 3, 2016, plaintiff made a FOIA request (the "Request") to USMS. The Request is attached as Exhibit A to plaintiff's complaint filed in this action.

6. By letter dated June 23, 2016, USMS acknowledged the Request and notified plaintiff that, given the complexity of responding to the request, it would take some time to search for potentially responsive documents and process his request. This letter is attached as Exhibit B to plaintiff's complaint.

7. During the summer of 2016, personnel at USMS Headquarters searched centralized USMS records located in Washington, D.C. USMS personnel also directed each of USMS's 94 individual field offices to search for additional records that are not centrally held.

Due to the broad scope of the request, the many different types of documents sought, and the need to search dozens of separate locations, the search process took USMS several months.

## This Litigation

8. After notifying USMS of his intent to bring suit, plaintiff filed this action on February 10, 2017.

9. Since litigation has commenced, USMS has conducted several discrete follow-up searches.

10. Also since this litigation has commenced, USMS has processed and produced to plaintiff several thousand pages of additional records. USMS has processed records consistent with priorities as agreed upon by the parties.

### A. The Medical Records Request

11. For the past several months, USMS has been processing potentially responsive records that fall within item 17 of plaintiff's Request, which seeks medical records for deceased USMS detainees. Specifically, item 17 seeks "all records pertaining to medical or mental health care" received by persons who died while detained by USMS, including each inmate's "full medical file." Request ¶ 17. The nine enumerated subparts of the item list various types of documents that plaintiff intends item 17 to cover.

12. USMS is responsible for the custody of federal pretrial detainees. However, USMS does not control (that is, it does not own or operate) the facilities in which USMS detainees are housed. Some USMS detainees are held in facilities of the Federal Bureau of Prisons ("BOP"). Others are held in state, local, or private correctional facilities pursuant to agreements those facilities have entered into with USMS; these facilities are, broadly speaking, the subject of plaintiff's Request.

13. Because USMS does not control facilities where pretrial detainees are held, USMS does not employ medical staff or provide medical care directly to detainees. Thus, USMS itself does not routinely possess medical records for detainees. However, when a detainee dies in custody, USMS generally requests and obtains the detainee file from the facility where the detainee had been housed.

14. USMS has now processed documents captured in the files relating to nine deceased detainees. Some, but not all, of these detainee files have included medical records that would be responsive to item 17. Per plaintiff's priorities, USMS is also continuing to process additional detainee files that will likely also contain medical records that would be responsive to item 17.

15. The records vary among the detainee files, but they include records for care provided within the detention facility, as well as hospital or other external provider medical care. Some detainee files also include coroner's reports or autopsy reports.

16. As explained further below, pursuant to FOIA exemptions 6 and 7(C), USMS has determined that it must withhold in full, on a categorical basis, detainee medical records as described in the previous paragraph.[1]

**B. Exemptions 6 and 7(C) (codified at 5 U.S.C. § 552(b)(6) and (b)(7)(C))**

17. FOIA exemption 6 provides that the FOIA does not apply to matters that are "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

---

[1] The first nine detainee files processed contained several autopsy and coroner's reports which USMS released. On further consideration, however, USMS now understands that such reports are exempt for the same reasons discussed below. Thus, USMS is withholding such documents in full going forward.

18. FOIA exemption 7(C) protects from disclosure records or information "compiled for law enforcement purposes" if a release of the records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy."

19. The medical records at issue here were compiled for law enforcement purposes because they are records of jail inmates—individuals detained prior to trial. USMS is a law enforcement agency tasked with, among other things, maintaining custody of federal prisoners "from the time of their arrest by a marshal or their remand to a marshal by the court, until the prisoner is committed by order of the court to the custody of the Attorney General for the service of sentence, otherwise released from custody by the court, or returned to the custody of the U.S. Parole Commission or the Bureau of Prisons." 28 C.F.R. § 0.111(k). Maintaining custody of pretrial detainees is a law enforcement activity, and the records associated with individual detainees are law enforcement records. In addition, USMS requested these particular records after detainees had died in order to (among other things) ascertain the circumstances of death. This too is a law enforcement activity.

20. Releasing medical records of deceased detainees could reasonably be expected to create an unwarranted invasion of personal privacy, in violation of exemption 7(C), and for the same reasons, in violation of exemption 6.

21. First, the detainees' own privacy interests would be violated by the release of the records. Medical records and information are recognized under FOIA and in society as among the most private information people possess. The text of exemption 6 specifically mentions "medical files" as presumptively receiving privacy protection.

22. Although the requested records are only for detainees who are deceased, those individuals still retain some privacy interests after death. That interest is particularly acute for records that discuss or show details of an individual's death.

5

23. Second, family members of deceased detainees also have a privacy interest in not releasing loved ones' medical files. Medical history is personal and private information, and publicizing the health issues of deceased relatives could be difficult or humiliating for surviving family members. For example, some of the detainees committed suicide; surviving family may not wish for that fact or details about a relative's mental health condition to be publicized.

24. Family members' own privacy interests are particularly acute for records that provide specific or graphic details of the detainee's death. Making public the details of a family member's death can be traumatic, and may force family members to relive a painful event. Release could also expose family members to public attention and lead to unwanted contacts from members of the public or the press.

25. When asserting FOIA exemptions 6 and 7(C), the government balances personal privacy interests against the public's interest in shedding light on USMS's performance of its duties.

26. For the reasons described above, disclosure of medical records would constitute an unwarranted invasion of personal privacy for both deceased detainees and their family members. Disclosure could damage the detainees' reputations or bring to light health information or facts about their deaths that they would have wished to keep private. Disclosure could also subject deceased detainees' families to trauma, embarrassment, harassment, and undue public attention. Such information, if disclosed to the public without the permission, could also lead to unwanted contact from others.

27. The individuals' privacy interests in the information contained in the record outweighs any relevant public interest in the disclosure of the information—that is, the public's ability to understand how USMS is carrying out its responsibilities.

28. First, the medical care was not provided by USMS. The detainees whose medical records are sought were not held in facilities operated by USMS. USMS did not provide any medical care, and the withheld medical records were not created by USMS. Any corrections staff who played a role in reporting detainee complaints to medical staff were not USMS employees. (In non-emergency cases only, for reasons of security and allocation of resources, the USMS will review and approve outside medical care.) In sum, the disclosure of the medical records would at most provide only minimal information to the public in understanding how USMS carries out its statutory responsibilities.

29. Second, even if there were some public interest in the medical records, those interests would not clearly outweigh the privacy interests of the detainees and their family members. USMS has already disclosed records from a database providing the identities of detainees who died in USMS custody, along with the facilities in which they were held, the date of death, and their cause of death in general terms, and other information about their detention. USMS has also disclosed other records from detainee files, including (when it was in the file) facility-produced investigative reports of the circumstances of death. The public thus has significant information about these individuals in particular and deaths in USMS custody in general. The marginal benefit in understanding USMS's operations from seeing the complete medical records is small, but the additional invasion of privacy is great.

30. Finally, as far as the government is aware, neither the deceased individuals nor their family members have consented to the disclosure of their medical records.

31. The government thus determined that the disclosure of the information described above would constitute a clearly unwarranted invasion of personal privacy. Moreover, the government determined that disclosure of the information described above, which was compiled

for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy.

## SEGREGABILITY

32. 5 U.S.C. § 552(b) requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."

33. The medical records are being withheld in full because the privacy exemptions apply to the medical records as a whole. The exempt personal information is so intertwined with non-exempt information that redactions would render the documents unintelligible.

## CONCLUSION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 3rd, 2018.

*Katherine Day*
Katherine Day
Associate General Counsel
USMS