UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SETH FREED WESSLER,

          Plaintiff,

- versus –

UNITED STATES DEPARTMENT OF
JUSTICE and UNITED STATES
MARSHALS SERVICE,

          Defendants.

No. 17 Civ. 976 (SHS)

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR PARTIAL SUMMARY JUDGMENT

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
*Counsel for Defendants*
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2697
peter.aronoff@usdoj.gov

*Of Counsel:*

PETER ARONOFF
Assistant United States Attorney

# CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1
BACKGROUND ........................................................................................................................... 1
ARGUMENT ................................................................................................................................. 3
   I.   Standard of Review ........................................................................................................... 3
   II.   The Government Has Properly Asserted FOIA's Privacy Exemptions Over the Medical Records of Deceased Detainees ....................................................................................... 4
      A.   Legal Standard ............................................................................................................ 4
      B.   Detainee Medical Records Are Protected by Exemptions 6 and 7(C) ........................ 5
      C.   The Government Properly Withheld the Exempt Documents in Full ....................... 10
CONCLUSION ............................................................................................................................ 11

# AUTHORITIES

Cases

*Am. Civil Liberties Union v. Dep't of,*
  *Def.*, 389 F. Supp. 2d 547 (S.D.N.Y. 2005) ................................................................. 5
*Assoc. Press v. U.S. Dep't of Justice*,
  549 F.3d 62 (2d Cir. 2008) ............................................................................................ 3
*Associated Press v. DOJ*,
  No. 06 Civ. 1758 (LAP), 2007 WL 737476 (S.D.N.Y. Mar. 7, 2007) ......................... 5
*Associated Press v. U.S. Dep't of,*
  *Def.*, 554 F.3d 274 (2d Cir. 2009) ............................................................................ 5, 7
*Blanton v. U.S. Dep't of Justice*,
  63 F. Supp. 2d 35 (D.D.C. 1999) ................................................................................. 6
*Campbell v. U.S. Dep't of Justice*,
  164 F.3d 20 (D.C. Cir. 1998) ........................................................................................ 6
*Carney v. U.S. Dep't of Justice*,
  19 F.3d 807 (2d Cir. 1994) ............................................................................................ 3
*Ctr. for Nat'l Sec. Studies v. DOJ*,
  331 F.3d 918 (D.C. Cir. 2003) ...................................................................................... 5
*Dep't of Air Force v. Rose*,
  425 U.S. 352 (1976) ...................................................................................................... 8
*DOD v. FLRA*,
  510 U.S. 487 (1994) ............................................................................................. 4, 5, 8
*Eil v. U.S. Drug Enf't Admin.*,
  878 F.3d 392 (1st Cir. 2017) ......................................................................................... 7
*John Doe Agency v. John Doe Corp.*,
  493 U.S. 146 (1989) ...................................................................................................... 3
*Karantsalis v. U.S. Dep't of Justice*,
  635 F.3d 497 (11th Cir. 2011) ...................................................................................... 5
*Landano v. U.S. Dep't of Justice*,
  956 F.2d 422, 430 (3d Cir. 1992) ................................................................................. 8
*Lead Industries Ass'n, Inc. v. OSHA*,
  610 F.2d 70 (2d Cir. 1979) ......................................................................................... 10
*Multi Ag Media LLC v. Dep't of Agric.*,
  515 F.3d 1224 (D.C. Cir. 2008) .................................................................................... 4
*Nat'l Archives & Records Admin. v. Favish*,
  541 U.S. 157 (2004) ........................................................................................ 6, 7, 9, 10
*Nat'l Sec. Archive Fund, Inc. v. CIA*,
  402 F. Supp. 2d 211 (D.D.C. 2005) ........................................................................... 10

*Neufeld v. IRS*,
    646 F.2d 661 (D.C. Cir. 1981) .................................................................................... 10
*New York Times Co. v. Nat'l Aeronautics & Space Admin.*,
    782 F. Supp. 628 (D.D.C. 1991) .................................................................................. 7
*New York Times Co. v. U.S. Dep't of Justice*,
    872 F. Supp. 2d 309 (S.D.N.Y. 2012) ......................................................................... 3
*Privacy Info. Ctr. v. Office of the Dir. of Nat'l Intelligence*,
    982 F. Supp. 2d 21 (D.D.C. 2013) ....................................................................... 10, 11
*Rimmer v. Holder*,
    700 F.3d 246 (6th Cir. 2012) ........................................................................................ 8
*Schrecker v. U.S. Dep't of Justice*,
    254 F.3d 162 (D.C. Cir. 2001) ..................................................................................... 6
*Thomas v. Office of U.S. Attorney for E. Dist. of New York*,
    928 F. Supp. 245 (E.D.N.Y. 1996) ............................................................................... 8
*U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*,
    489 U.S. 749 (1989) .................................................................................................. 7, 8
*U.S. Dep't of State v. Washington Post Co.*,
    456 U.S. 595 (1982) ..................................................................................................... 4
*Wilner v. NSA*,
    592 F.3d 60 (2d Cir. 2009) ........................................................................................ 3, 4

Statutes

5 U.S.C. § 552 ........................................................................................................................ 1
5 U.S.C. § 552(b) ................................................................................................................. 10
5 U.S.C. § 552(b)(6) .............................................................................................................. 4
5 U.S.C. § 552(b)(7)(C) ........................................................................................................ 4

Rules

Fed. R. Civ. P. 56(a) .............................................................................................................. 3

Defendants the United States Department of Justice ("DOJ") and United States Marshals Service ("USMS," and together with DOJ, the "government") respectfully submit this memorandum of law in support of their motion for partial summary judgment with respect to their assertion of privacy exemptions for medical records in this action brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

## PRELIMINARY STATEMENT

To conduct its work, the federal government often must collect private information about ordinary people. FOIA's personal privacy exemptions recognize that personal information does not become public just because the government happens to possess it.

Here, Plaintiff's FOIA request seeks the medical records of federal pretrial detainees who died in custody. As FOIA's text recognizes, medical files are intensely personal and private. Releasing medical records—including mental health information or graphic information about a person's death—would violate the privacy rights of the deceased detainees and their families, and could cause humiliation or anguish for their surviving family. Plaintiff has not shown that releasing these medical records en masse would shed light on USMS's activities, let alone that any public interest outweighs the serious privacy interests at stake. For these reasons, the government's motion for partial summary judgment should be granted.

## BACKGROUND

On April 3, 2016, plaintiff submitted a FOIA request ("the Request") to defendant USMS. *See* Complaint, Ex. A, ECF No. 1 at 1-8. According to the Request, plaintiff, an investigative journalist, sought records related to federal pretrial detainees held in state, local or private detention facilities. Request at 1. The Request includes 18 separate items, many with several separate subparts. To date, USMS has processed and produced thousands of pages of

records in response to the Request, with certain redactions or withholdings based on FOIA's exemptions. Declaration of Katherine Day ("Day Decl.") ¶¶ 9-10. Given the scope of the Request, its processing of responsive records will not be completed for some time.

Item 17 of the Request seeks the medical records of federal pretrial detainees who died in custody. Complaint, Ex. A, ECF No. 1 at 6. USMS does not own or operate the facilities where federal pretrial detainees are held, and USMS does not have medical staff or provide medical care to detainees itself. Day Decl. ¶ 13. Thus, USMS does not routinely create or possess detainee medical records. *Id*. But when a federal pretrial detainee dies in custody, USMS generally requests the detainee's file from the facility that had housed him or her, and these files often contain medical records. *Id*. Thus, USMS does possess some medical records for some deceased detainees. *Id*. These records vary from file to file, but they have included records of medical care provided at facilities, and records from outside hospitals or other external providers. *Id*. ¶ 15. They have also included autopsies or coroner's reports. *Id*.[1]

USMS agreed to prioritize the processing of medical records of deceased detainees. Day Decl. ¶ 11. But as explained by the Day Declaration, USMS has determined that FOIA's privacy exemptions bar the release of such medical records, and that it will therefore "withhold in full, on a categorical basis, detainee medical records." *Id*. ¶ 16. Plaintiff contests the validity of this withholding; thus, the government now seeks a declaration that its categorical withholding of medical records is proper.[2]

---

[1] As the Day Declaration notes, "In non-emergency cases only, for reasons of security and allocation of resources, the USMS will review and approve outside medical care." Day Decl. ¶ 28.

[2] Because the government has categorically withheld medical records in full pursuant to exemptions 6 and 7(C), it has not yet had the opportunity to review these records to determine if other exemptions apply to these records in whole or in part. If the Court holds that the categorical withholding was improper, the government respectfully submits that the appropriate course would be for the government to process these records for any additional applicable exemptions.

**ARGUMENT**

**I.     Standard of Review**

FOIA disputes are generally resolved by summary judgment. *See, e.g.*, *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994).[3] Summary judgment is warranted if a movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The only issue raised in this motion for partial summary judgment is whether the government properly applied two exemptions to categorically withhold detainee medical records. While FOIA is intended to promote government transparency, the FOIA exemptions are "intended to have meaningful reach and application." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). FOIA thus balances "the public's right to know and the government's legitimate interest in keeping certain information confidential." *Assoc. Press v. U.S. Dep't of Justice*, 549 F.3d 62, 65 (2d Cir. 2008) (internal quotation marks omitted).

To meet its summary judgment burden on exemptions, the government may rely on declarations that give "reasonably detailed explanations why any withheld documents fall within an exemption." *Carney*, 19 F.3d at 812 (footnote omitted). An agency's declaration in support of its determination that records are exempt is "accorded a presumption of good faith." *Id.* (quotation marks omitted); *Wilner v. NSA*, 592 F.3d 60, 69 (2d Cir. 2009). The agency's

---

[3] The government has not submitted a Local Rule 56.1 statement. "The general rule in this Circuit is that in FOIA actions, agency affidavits alone will support a grant of summary judgment, and Local Civil Rule 56.1 statements are not required." *New York Times Co. v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012) (internal quotation marks and alterations omitted).

justification for asserting an exemption need only appear "logical or plausible." *Wilner v. NSA*, 592 F.3d 60, 73 (2d Cir. 2009) (citation and internal quotation marks omitted).

**II.  The Government Has Properly Asserted FOIA's Privacy Exemptions Over the Medical Records of Deceased Detainees**

   **A.  Legal Standard**

The government has withheld medical records pursuant to FOIA's general privacy provision, exemption 6, as well as the law-enforcement-specific exemption 7(C).

Exemption 6 exempts from disclosure information from personnel, medical, or other similar files where disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The purpose of exemption 6 is to "protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982).

To be protected, the individual's privacy interest in the information's nondisclosure need only be more than de minimis. *See Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229-30 (D.C. Cir. 2008). If a protected privacy interest is found, the court must then consider whether the "public interest in disclosure outweighs the individual privacy concerns." *Id*. at 1230 (internal quotation marks omitted). But the "only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of FOIA, which is contribut[ing] *significantly* to public understanding *of the operations or activities of the government*." *DOD v. FLRA*, 510 U.S. 487, 495 (1994) (first emphasis added).

FOIA's exemption 7(C) is more specific than exemption 6: it excepts from disclosure records or information compiled for law enforcement purposes where its production "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). As explained in the Day Declaration, the records and information withheld by

4

the Government in this matter were compiled for law enforcement purposes, and thus satisfy the threshold requirement of Exemption 7(C). *See id.* ¶ 19.[4]

Exemption 7(C) "is more protective of privacy" than exemption 6. *Associated Press v. DOJ*, No. 06 Civ. 1758 (LAP), 2007 WL 737476 at *4 (S.D.N.Y. Mar. 7, 2007).[5] In determining whether personal information is exempt from disclosure under exemption 7(C), the Court must balance the public's need for this information against the individual's privacy interest. *Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274, 284 (2d Cir. 2009).

### B. Detainee Medical Records Are Protected by Exemptions 6 and 7(C)

#### 1. The Disclosure of Medical Records Could Reasonably Be Expected to Infringe on the Privacy Interests of the Decease Detianees and Their Surviving Family Members

To assert exemption 6 or 7(C), the government must first identify a privacy interest in the information sought. *Associated Press.*, 554 F.3d at 285. The government has identified two separate types of privacy interests: the detainees' own, and the interests of their surviving family members.

---

[4] As explained in the Day Declaration, USMS is a law enforcement agency, and its collection of records on federal pretrial detainees is a law enforcement function. *Id*. ¶ 19. Moreover, the medical records at issue here were gathered for USMS to ascertain the circumstances of their deaths, also a law enforcement activity. *Id*. These records thus satisfy exemption 7's threshold requirement, and this determination is entitled to deference. *See Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 926 (D.C. Cir. 2003) (claim of law enforcement purpose by agency specializing in law enforcement entitled to deference); *Karantsalis v. U.S. Dep't of Justice*, 635 F.3d 497, 502 (11th Cir. 2011) (pretrial detainee records, including booking photographs, held by USMS were compiled for law enforcement purpose).

[5] Because of textual differences between exemptions 6 and 7(C), the standard the government must show to meet exemption 7(C) is lower than for exemption 6. *See, e.g.*, *Am. Civil Liberties Union v. Dep't of Def.*, 389 F. Supp. 2d 547, 569 (S.D.N.Y. 2005). First, under exemption 7(C), the information's release need only be "reasonably [] expected to constitute" an unwarranted invasion of privacy, rather than the more definite "would constitute" such an invasion in exemption 6. Second, the invasion need only be "unwarranted" to meet exemption 7(C), whereas to meet exemption 6, the invasion must be "clearly unwarranted."

First, the detainees have a privacy interest in their medical records. *See* Day Decl. ¶¶ 21-22. The plain text of exemption 6 recognizes "medical files" as private, which accords with the confidential treatment of medical information in society generally. *See* Day Decl. ¶ 21. The detainees have died, but that does not eliminate their privacy rights; instead, it is merely a consideration in FOIA balancing. *See, e.g.*, *Schrecker v. U.S. Dep't of Justice*, 254 F.3d 162, 166 (D.C. Cir. 2001). For example, reputational interests survive death, and living people feel more secure knowing their private information will not be publicized after death. *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 33–34 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999). Thus, courts have held that, for example, the identities of law enforcement sources are still protected by exemption 7(C) after death. *Blanton v. U.S. Dep't of Justice*, 63 F. Supp. 2d 35, 46 (D.D.C. 1999).

Second, the detainees' surviving family members have privacy interests in the medical records. Day Decl. ¶¶ 23-24. As explained in the Day Declaration, releasing private medical information of a deceased family member—for example, mental health information of a relative who committed suicide—may be humiliating or distressing. Day Decl. ¶ 23. Furthermore, releasing a deceased relative's medical information, including information about the relative's death, may be traumatic and force family members to relive a painful event. Day Decl. ¶ 24. That concern is heightened because the information at issue here—for example, autopsy reports—may be detailed or graphic. Day Decl. ¶ 24. And releasing the information could bring unwanted attention to family members—for example, with press inquiries or heightened public attention to the family member's death. Day Decl. ¶ 24.

The Supreme Court and the lower courts have recognized surviving family's privacy interests in medical records and the details of a relative's death. For example, in *Nat'l Archives*

*& Records Admin. v. Favish*, 541 U.S. 157, 165–71 (2004), the Supreme Court held that exemption 7(C) protected death-scene photographs held in law enforcement files because their release could be painful and invasive for surviving family. Relying on a declaration from the decedent's sister, the Court expressly recognized that public release of graphic details of a relative's death could be traumatic for family members. *Id.* at 167. The Court also noted that state courts applying common law principles recognize family's privacy interest in controlling the release of photographs, autopsy reports, or details of a relative's death. *Id.* at 168-69 (citing examples from the high courts of New York, Washington, Arkansas, and Georgia, and the Second Restatement of Torts). Recognizing such interests in FOIA is proper because Congress did not intend exemptions 6 and 7(C) to encompass only "some limited or 'cramped notion'" of privacy. *Id.* at 165 (quoting *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989)). The lower courts have also recognized surviving family's privacy interests in a variety of records. *See, e.g.*, *Eil v. U.S. Drug Enf't Admin.*, 878 F.3d 392, 400 (1st Cir. 2017) (medical and death-related records that had been exhibits at criminal trial); *New York Times Co. v. Nat'l Aeronautics & Space Admin.*, 782 F. Supp. 628, 631-32 (D.D.C. 1991) (under exemption 6, audio recording of space shuttle Challenger astronauts' final moments).

In sum, both the detainees themselves and their family members have privacy interests in the medical records.

### 2. Release of the Information at Issue Does Not Advance the Public Interest in Understanding Federal Government Operations

Because the public's interest in obtaining deceased detainees' medical files does not outweigh the significant privacy interests of the detainees and their families, disclosure is not warranted. Plaintiff must show that disclosure would be warranted because a significant public interest outweighs the privacy interests identified above. *See, e.g.*, *Associated Press,* 554 F.3d at

285. The only relevant public interest is "to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976) (citations omitted); *see also Reporters Comm.*, 489 U.S. at 774 ("FOIA's central purpose is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed."). Plaintiff cannot meet that standard.

First, because the medical care and day-to-day oversight of prisoners was conducted by state, local, or private facilities, plaintiff cannot show that releasing detainees' private medical records would "contribut[e] significantly to the public understanding" of the federal government's compliance with its duties. *Fed. Labor Relations Auth.*, 510 U.S. at 495 (quotation marks omitted); *see* Day Decl. ¶¶ 27-30. USMS did not provide the medical care at issue; non-federal facilities (or outside medical providers) did. Day Decl. ¶ 28. Thus, to the extent plaintiff claims that the public has an interest in knowing whether these detainees received adequate medical care, that shows whether the state, local, or private facility was meeting a certain standard; the federal government's role is second-order. Day Decl. ¶ 28. When evaluating the public interest in disclosure, courts weigh only the conduct of federal agencies, and not private parties or state or local agencies. *See Reporters Comm.*, 489 U.S. at 773; *Landano v. U.S. Dep't of Justice*, 956 F.2d 422, 430 (3d Cir. 1992) ("there is no FOIA-recognized public interest in discovering wrongdoing by a state agency"), *vacated on other grounds*, 508 U.S. 165 (1993); *accord Thomas v. Office of U.S. Attorney for E. Dist. of New York*, 928 F. Supp. 245, 251 (E.D.N.Y. 1996); *Rimmer v. Holder*, 700 F.3d 246, 258-59 (6th Cir. 2012).

To the extent plaintiff claims a public interest in exposing a supposed failure of federal oversight of non-federal facilities leading to detainee deaths, he has failed to support this

8

speculation with evidence, and he has failed to connect this claim to the medical records themselves. When serious third-party privacy rights are at stake, a requester must do more than speculate that releasing records would expose government impropriety or negligence. *See Favish*, 541 U.S. at 172-74. Instead, "the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id.* at 174. Plaintiff fails to provide evidence of any impropriety or negligence on the part of the federal government. Speculation on the effects of facility expansion and past discrepancies in inspection reports, *see* Compl. ¶¶ 13-21, 33, do not suffice to constitute evidence of wrongdoing. *See Favish*, 541 U.S. at 172. The fact that federal pretrial detainees have died does not demonstrate impropriety or negligence on behalf of either the facilities they were held, let alone by USMS. The Marshals have approximately 50,000 pretrial prisoners in custody at any time; each year, some detainees die, including from natural causes.[6]

Furthermore, plaintiff has not shown how the en masse release of private third-party medical records for an indeterminate number of detainees, who were held over the course of several years and housed at numerous different facilities, would vindicate the public interest. There is a distinction between demonstrating a public interest is at stake, and whether or not that interest will be furthered by the disclosure of the requested information. *See Favish*, 541 U.S. at 172-73 (a "necessary nexus" is required between the requested information and the asserted public interest). Plaintiff cannot connect the minute details of medical care provided to various different detainees to any particular or general failure of USMS oversight.

Finally, plaintiff has not shown that, given the information already available, the marginal value of releasing complete medical records would significantly advance an interest in

---

[6] United States Marshals Service, Facts and Figures, at
https://www.usmarshals.gov/duties/factsheets/facts.pdf (dated April 13, 2018).

9

understanding the USMS's performance of its duties. USMS has already produced, pursuant to the Request, data providing details about deaths in USMS custody, including the date, location, and cause of death for specific identified individuals. Day Decl. ¶ 29. USMS has also produced other materials from the detainees' files, including (where available) facility-produced investigative reports about the circumstances of detainee deaths. *Id*. Whatever additional understanding the public may achieve from seeing complete detainee medical files is small compared to the significant intrusion on privacy rights. *Id*. Thus, the balance does not weigh in favor of disclosure.[7]

### C. The Government Properly Withheld the Exempt Documents in Full

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). This provision does not require disclosure of records in which the non-exempt information that remains is without value or would be meaningless. *See, e.g.*, *Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 220-21 (D.D.C. 2005) (concluding that no reasonably segregable information exists because "the non-exempt information would produce only incomplete, fragmented, unintelligible sentences composed of isolated, meaningless words"). Disclosure is not required when what remains after removing exempt information is "'an edited document with little informational value.'" *Elec. Privacy Info. Ctr. v. Office of the Dir. of Nat'l Intelligence*, 982 F. Supp. 2d 21, 31-32 (D.D.C. 2013) (quoting *Neufeld v. IRS*, 646 F.2d 661, 666 (D.C. Cir. 1981)); *accord Lead Industries Ass'n, Inc. v. OSHA*, 610 F.2d 70, 88 (2d Cir. 1979) (Friendly, J.) (disclosure not required where all that

---

[7] Finally, as the Day Declaration notes, USMS has not received or sought privacy waivers from the families of deceased detainees, so there is no basis to believe that any of the privacy interests identified above have been waived. Day Decl. ¶ 30.

10

remains is "a few nuggets of non-intertwined, 'reasonably segregable'" information). Even when "the cost of releasing that information would be minimal," a "token release" of information that could not "prove of interest" is not required by FOIA. *EPIC*, 982 F. Supp. 2d at 31-32.

Here, the medical records were withheld in full because the exempt personal information—the detainees' medical records—constituted the entirety of each document. Day Decl. ¶ 33; *see, e.g.*, *Rodriguez v. U.S. Dep't of Army*, 31 F. Supp. 3d 218, 236 (D.D.C. 2014) (approving withholding in full of medical files pursuant to exemption 6). Thus, there was no information that could be reasonably segregated from these documents and released.

## CONCLUSION

For the reasons given above, the government's motion for partial summary judgment should be granted.

Dated: July 6, 2018
New York, New York

        Respectfully submitted,

        GEOFFREY S. BERMAN
        United States Attorney
        Southern District of New York

By:   */s/ Peter Aronoff*
        PETER ARONOFF
        Assistant United States Attorney
        86 Chambers Street, Third Floor
        New York, New York 10007
        Telephone: (212) 637-2697
        Facsimile: (212) 637-2717
        E-mail: peter.aronoff@usdoj.gov