**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SETH FREED WESSLER,

        Plaintiff,

v.                                                                No. 1:17-CV-976 (SHS)

UNITED STATES DEPARTMENT OF JUSTICE and
UNITED STATES MARSHALS SERVICE,

        Defendants.


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT AND IN OPPOSITION TO THE GOVERNMENT'S MOTION
FOR SUMMARY JUDGMENT**


J. David Pollock
Lawrence S. Lustberg
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102
Phone:  973-596-4500


*Attorneys for Plaintiff Seth Wessler*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 3

    I.  THE USMS HAS NOT MET ITS BURDEN FOR WITHHOLDING THE
        MEDICAL RECORDS OF PRISONERS THAT DIED IN ITS CUSTODY ...................... 4

        A.  The Government Has Not Demonstrated That the Privacy Interests at Stake
            are More Than *de minimis* ........................................................................................ 6

        B.  Disclosure Would Serve the FOIA's Public Interest Purpose ................................. 9

CONCLUSION ................................................................................................................... 16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Civil Liberties Union v. Dep't of Def.*,
    389 F. Supp. 2d 547 (S.D.N.Y. 2005)........................................................................5

*Am. Civil Liberties Union v. Dep't of Def.*,
    543 F.3d 59 (2d Cir. 2008), *cert. granted, judgment vacated on other grounds*,
    558 U.S. 1042 (2009)..............................................................................................4

*Am. Civil Liberties Union v. U.S. Dep't of Homeland Sec.*,
    973 F. Supp. 2d 306 (S.D.N.Y. 2013)......................................................................7

*Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review*,
    830 F.3d 667 (D.C. Cir. 2016) .................................................................................7

*Am. Civil Liberties Union v. Dep't of Def.*,
    339 F. Supp. 2d 501 (S.D.N.Y. 2004)......................................................................3

*Associated Press v. U.S. Dep't of Def.*,
    554 F.3d 274 (2d Cir. 2009).....................................................................................5

*Baltimore Sun v. U.S. Marshals Serv.*,
    131 F. Supp. 2d 725 (D. Md. 2001) .......................................................................11

*Campbell v. U.S. Dep't of Justice*,
    164 F.3d 20 (D.C. Cir. 1998) ...................................................................................6

*Clemente v. Fed. Bureau of Investigation*,
    64 F. Supp. 3d 110, 119-20 (D.D.C. 2014), aff'd, 867 F.3d 111 (D.C. Cir. 2017) ..................6

*Davin v. U.S. Dep't of Justice*,
    60 F.3d 1043 (3d Cir. 1995).....................................................................................6

*Davis v. Dep't of Justice*,
    460 F.3d 92 (D.C. Cir. 1996) ...................................................................................6

*Dep't of Air Force v. Rose*,
    425 U.S. 352 (1976)...............................................................................................12

*Dep't of State v. Ray*,
    502 U.S. 164 (1991)...............................................................................................11

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
    532 U.S. 1 (2001).................................................................................................3, 4

*Eil v. U.S. Drug Enf't Admin.*,
  878 F.3d 392 (1st Cir. 2017) ........................................................................... 5

*Elec. Frontier Found. v. Office of the Dir. of Nat. Intelligence*,
  639 F.3d 876 (9th Cir. 2010) ......................................................................... 11

*Fed. Labor Relations Auth. v. U.S. Dep't of Veterans Affairs*,
  958 F.2d 503 (1992) ........................................................................................ 7

*Ferguson v. F.B.I.*,
  774 F. Supp. 815 (S.D.N.Y. 1991), rev'd in part on other grounds, 957 F.2d
  1059 (2d Cir. 1992) .......................................................................................... 6

*Halpern v. FBI*,
  181 F.3d 279 (2d Cir. 1999) ............................................................................ 3

*Hopkins v. U.S. Dep't of Hous. and Urban Dev.*,
  929 F.2d 81 (2d Cir. 1991) .............................................................................. 8

*Int'l Bhd. of Elec. Workers Local Union No. 5 v. U.S. Dep't of Hous. and Urban
  Dev.*,
  852 F.2d 87 (3d Cir. 1988) ............................................................................ 11

*Lardner v. U.S. Dep't of Justice*,
  2005 WL 758267 (D.D.C. Mar. 31, 2005) ..................................................... 12

*McDonnell v. United States*,
  4 F.3d 1227 (3d Cir. 1993) .............................................................................. 6

*Mead Data Cent., Inc., v. U.S. Dep't of Air Force*,
  566 F.2d 242 (D.C. Cir. 1977) ........................................................................ 4

*Morley v. C.I.A.*,
  508 F.3d 1108 (D.C. Cir. 2007) ...................................................................... 3

*Multi Ag Media LLC v. Dep't of Agric.*,
  515 F.3d 1224 (D.C. Cir. 2008) .................................................................... 11

*Nat'l Archives & Records Admin. v. Favish*,
  541 U.S. 157 (2004) ..................................................................................... 5, 8

*Nat'l Council of La Raza v. Dep't of Justice*,
  411 F.3d 350 (2d Cir. 2005) ............................................................................ 9

*Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*,
  71 F.3d 885 (D.C. Cir. 1995) ........................................................................ 11

iii

*N.Y. Pub. Interest Research Grp. v. U.S. Env'tl Prot. Agency,*
    249 F. Supp. 2d 327 (S.D.N.Y. 2003)................................................................3, 15

*New York Times Co. v. U.S. Dep't of Justice,*
    872 F. Supp. 2d 309 (S.D.N.Y. 2012)....................................................................2

*NLRB v. Robbins Tire & Rubber Co.,*
    437 U.S. 214 (1978)..............................................................................................3

*People for the Ethical Treatment of Animals v. Nat'l Inst. of Health, Dep't of*
    *Health & Human Servs.,*
    745 F.3d 535 (D.C. Cir. 2014)............................................................................11

*Sussman v. U.S. Marshals Serv.,*
    494 F.3d 1106 (D.C. Cir. 2007)............................................................................8

*U.S. Dep't of Def. v. Fed. Labor Relations Auth.,*
    510 U.S. 487 (1994)..............................................................................................5

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,*
    489 U.S. 749 (1989)..................................................................................... *passim*

*Vest v. Dep't of the Air Force,*
    793 F. Supp. 2d 103 (D.D.C. 2011)......................................................................6

*Wash. Post Co. v. U.S. Dep't of Health & Human Servs.,*
    690 F.2d 252 (D.C. Cir. 1982)............................................................................12

**Statutes**

5 U.S.C. § 552(a)(4)(B) ....................................................................................3, 4

5 U.S.C. § 552(b) ....................................................................................................8

5 U.S.C. § 552(b)(6) ..............................................................................................4

5 U.S.C. § 552(b)(7)(C) ......................................................................................4, 7

**Other Authorities**

Department of Justice Guide to the Freedom of Information Act: Exemption 6
    (Jan. 10, 2014),
    https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/exemption6.pdf ................6

*Fact Sheet: Prisoner Operations,* United States Marshals Service (last visited
    August 1, 2018),
    https://www.usmarshals.gov/duties/factsheets/prisoner_ops.pdf ............................................12

Seth Freed Wessler, Special Investigation: Dying in Private Prisons, The Nation,
     https://www.thenation.com/special/private-prison-deaths/ (last visited August
     3, 2018) ................................................................................................................................15

**Rules**

Local Civil Rule 56.1 ...............................................................................................................2

## INTRODUCTION

Plaintiff Seth Freed Wessler ("Plaintiff"), an investigative journalist, here seeks to vindicate his rights under the Freedom of Information Act ("FOIA") to obtain records from Defendant United States Marshals Service ("USMS") pertaining to its responsibility under federal law to provide for the care and treatment of federal pre-trial detainees. The request seeks, *inter alia*, the medical records of federal pre-trial detainees who died while in USMS custody while being held in a state, local or private detention facility pursuant to a contract or agreement with USMS. The USMS asks this Court to uphold its decision to withhold those records because, it claims, disclosure would not serve the public interest purpose of the FOIA.

The Government's position is misguided: it may not withhold responsive records under FOIA under either of the exemptions applicable to privacy claims unless those records implicate a more than *de minimis* privacy interest that is not outweighed by the public interest served by disclosure. The Government has not met its burden to show more than a *de minimis* privacy interest because it relies on a generalized privacy interest which, numerous courts have held, is significantly diminished by the subject individual's death. The public interest served by disclosure, meanwhile, is clear and substantial: to shed light on the performance of the USMS as the custodian of more than 50,000 federal pretrial detainees on a daily basis. Because the medical records at issue will unquestionably add to the public's knowledge "about what their government is up to" in this critical realm, the Court should grant Plaintiff's motion for summary judgment.

1

# BACKGROUND[1]

Defendant USMS is responsible for the pre-trial detention of individuals charged with federal crimes, but it does not own or operate its own prison facilities. Rather, it negotiates agreements with state and local prisons, and private detention facilities, to hold 80% of the 50,000 detainees in its custody on a daily basis. *See* Compl. (ECF No. 1) ¶¶ 8-10. However, public information about the conditions in which those federal detainees are held is scarce; meanwhile, serious concerns have been raised by, *inter alia*, the Department of Justice Inspector General with regard to the effectiveness of the oversight and monitoring practices of the USMS with respect to the non-federal prisons and jails in which it holds federal pretrial detainees. *Id.* ¶¶ 11-25.

In furtherance of his well-regarded investigative journalism work addressing the treatment of prisoners and detainees in the federal criminal justice system, Plaintiff submitted a FOIA request to the USMS and the Department of Justice on April 3, 2016 seeking information and records concerning the facilities in which USMS detainees are held, how the USMS monitors these facilities, and the medical care provided to individuals in USMS custody who have died in such facilities. Wessler Decl. ¶ 6. Plaintiff received no substantive response to his request and, accordingly, filed this action on February 10, 2017 in order to compel Defendant USMS to search for, process, and produce records responsive to his request. *See* Compl. ¶¶ 29-31. Defendant USMS has since begun to process and produce responsive records. However, in

---

[1] Consistent with the Government's submission, *see* Defendants' Memorandum of Law in Support of Motion for Partial Summary Judgment ("Gov. Br.") at 3 n.3, and the general practice in the Second Circuit that "Local Civil Rule 56.1 statements are not required" in support of motions for summary judgment in FOIA actions, Plaintiff files herewith the Declaration of Seth Freed Wessler ("Wessler Decl.") in lieu of a statement pursuant to Local Civil Rule 56.1. *See New York Times Co. v. U.S. Dep't of Justice*, 872 F. Supp. 2d 309, 312 (S.D.N.Y. 2012).

lieu of providing full records responsive to Plaintiff's request for the medical files of detainees who have died while in USMS custody, Defendant USMS has determined to withhold significant portions of those records pursuant to FOIA exemptions 6 and 7(C). *See* Declaration of Katherine Day ("Day Decl.") ¶¶ 15-16.

## ARGUMENT

The purpose of FOIA is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). FOIA was "enacted to illuminate government activities . . . to provide a means of accountability, to allow Americans to know what their government is doing." *Am. Civil Liberties Union v. Dep't of Def.*, 339 F. Supp. 2d 501, 504 (S.D.N.Y. 2004) (citing *Halpern v. FBI*, 181 F.3d 279, 284-85 (2d Cir. 1999)); *N.Y. Pub. Interest Research Grp. v. U.S. Env'tl Prot. Agency*, 249 F. Supp. 2d 327, 331 (S.D.N.Y. 2003) (purpose of FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny") (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)).

FOIA thus "adopts as its most basic premise a policy strongly favoring public disclosure of information in the possession of federal agencies." *Halpern*, 181 F.3d at 286. While there are nine exemptions pursuant to which an agency may withhold information, *see* 5 U.S.C. §§ 552(a)(4)(B) & (b)(1)-(9), these exemptions are narrowly construed and the Government bears the burden of proving that any one applies. *See Halpern*, 181 F.2d at 287; *see also Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7-8 (2001) (FOIA exemptions are narrowly construed); *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989) (burden of proving that withholding the records is not improper falls on the agency); *Morley v. C.I.A.*, 508 F.3d 1108, 1114-15 (D.C. Cir. 2007) ("[E]xemptions from

disclosure must be narrowly construed . . . and 'conclusory and generalized allegations of exemptions' are unacceptable.'"); *Mead Data Cent., Inc., v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977) (agencies not permitted to make "sweeping, generalized claims of exemption for documents"). It is well established that these "limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Klamath Water Users*, 532 U.S. at 7-8.

Judicial review of agency actions under the FOIA is conducted *de novo*, and agency interpretations of its provisions are not entitled to deference. 5 U.S.C. § 552(a)(4)(B). FOIA expressly places the burden of persuasion on the agency "to sustain its action" in withholding responsive records. *Id.* "Doubts . . . are to be resolved in favor of disclosure." *Am. Civil Liberties Union v. Dep't of Def.*, 543 F.3d 59, 66 (2d Cir. 2008), *cert. granted, judgment vacated on other grounds*, 558 U.S. 1042 (2009).

I.    **THE USMS HAS NOT MET ITS BURDEN FOR WITHHOLDING THE MEDICAL RECORDS OF PRISONERS THAT DIED IN ITS CUSTODY.**

Defendant USMS invokes the privacy protections of FOIA exemptions 6 and 7(C) to withhold an entire category of records responsive to Plaintiff's FOIA request: the medical records pertaining to the care and treatment of individuals in USMS custody who died while detained in state, local and private prisons and jails under contract or agreement with USMS. Those two exemptions are closely related. Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), while exemption 7(C) permits an agency to withhold records or information compiled for law enforcement purposes, "but only to the extent that the production of such [materials] . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). Because of the textual differences in the statutes, the

Supreme Court has recognized that exemption 7(C) is "somewhat broader" than exemption 6. *Reporters Comm.*, 489 U.S. at 762. Thus, where, as here, both exemptions are implicated, courts have focused on Exemption 7(C) because "all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)." *Eil v. U.S. Drug Enf't Admin.*, 878 F.3d 392, 397 (1st Cir. 2017); *see Reporters Comm.*, 489 U.S. at 762 n. 12 ("Because Exemption 7(C) covers this case, there is no occasion to address the application of Exemption 6."); *Am. Civil Liberties Union v. Dep't of Def.*, 389 F. Supp. 2d 547, 572 (S.D.N.Y. 2005) (same).

Because Exemptions 6 and 7(C), by their terms, provide for exemption only in those instances in which disclosure is "unwarranted," they require that courts balance the privacy interests at stake against the public interests that would be served by disclosure in order to determine whether exemption 7(C) applies. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171 (2004) (citing *Reporters Comm.*, 489 U.S. at 762). "The first question to ask in determining whether Exemption 7(C) applies is whether there is any privacy interest in the information sought." *Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274, 284 (2d Cir. 2009). Where the privacy interest is greater than *de minimis*, the FOIA requester may establish a sufficient reason for disclosure by showing that (1) "the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and (2) "the information [requested] is likely to advance that interest." *Favish*, 541 U.S. at 172. And "the only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government." *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (internal punctuation and citation omitted)

(emphasis in original); *see also Reporters Comm.*, 489 U.S. at 773 (Congress, in enacting FOIA, "focuse[d] on the citizens' right to be informed about what their government is up to" (internal quotation marks omitted)).

A.    The Government Has Not Demonstrated That the Privacy Interests at Stake are More Than *de minimis*.

As the government concedes, the death of the individuals whose medical records are at issue is an important consideration in assessing the privacy interests at stake pursuant to exemptions 6 and 7(C). Indeed, there is no question but that "death clearly matters, as the deceased by definition cannot personally suffer the privacy-related injuries that may plague the living." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 33 (D.C. Cir. 1998). Accordingly, numerous courts have held that the death of the individual whose privacy interests are at stake diminishes the strength of the privacy interest. *See, e.g., Davis v. Dep't of Justice*, 460 F.3d 92, 98 (D.C. Cir. 1996); *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1058 (3d Cir. 1995) (holding that "[p]ersons who are deceased have no privacy interest in nondisclosure of their identities" (quoting *McDonnell v. United States*, 4 F.3d 1227, 1242 (3d Cir. 1993)); *Clemente v. Fed. Bureau of Investigation*, 64 F. Supp. 3d 110, 119-20 (D.D.C. 2014) ("[I]t is well-settled law that an individual's death diminishes, but does not eliminate, her privacy interest in the nondisclosure of any information about her that appears in law enforcement records."), *aff'd*, 867 F.3d 111 (D.C. Cir. 2017); *Vest v. Dep't of the Air Force*, 793 F. Supp. 2d 103, 122 (D.D.C. 2011) (same); *Ferguson v. F.B.I.*, 774 F. Supp. 815, 825 (S.D.N.Y. 1991) ("A dead person's privacy interest may survive his or her death, but it is necessarily greatly diminished by death and must be balanced against the plaintiff's interest and the public interest in disclosure."), *rev'd in part on other grounds*, 957 F.2d 1059 (2d Cir. 1992). Indeed, the Department of Justice itself has recognized as much. *See* Department of Justice Guide to the Freedom of Information Act:

Exemption 6 (Jan. 10, 2014) ("An individual who is deceased has greatly diminished personal privacy interests in the context of the FOIA."), https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/exemption6.pdf.

In light of the decedents' "greatly diminished" personal privacy interests, the Government has not met its burden to establish a "more than *de minimis* privacy interest" in the medical records at issue. *Fed. Labor Relations Auth. v. U.S. Dep't of Veterans Affairs*, 958 F.2d 503, 510 (1992). Although the Government argues that the detainees retain "a privacy interest in their medical records" after death based upon "reputational interests," Gov. Br. 6, it cites no authority – and Plaintiff has found none – for the proposition that a generalized privacy interest in the confidentiality of medical records survives an individual's death and constitutes more than a *de minimis* privacy interest under FOIA. Nor has the Government met its burden to show that such a generalized privacy interest in the confidentiality of medical records, particularly in the absence of any reason to believe that the records at issue would cause reputational harm, undue notoriety or embarrassment, "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Instead, the Government's reasoning is precisely the sort of "conclusory and generalized" assertion that other courts have found to be an insufficient basis for categorical withholding. *See, e.g.*, *Am. Civil Liberties Union v. U.S. Dep't of Homeland Sec.*, 973 F. Supp. 2d 306, 316 (S.D.N.Y. 2013) (rejecting the Government's assertion of a privacy interest under exemptions 6 and 7(C) because it did not "adequately explained why individual categories of disputed information . . . implicate privacy concerns"); *Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review*, 830 F.3d 667, 675 (D.C. Cir. 2016) (because "not every [immigration] judge has the same privacy interests at stake" in records regarding complaints lodged against them, agency's explanation for categorical

withholding was insufficient because it did not allow the court "to determine whether the specific claimed exemptions are properly applied").

Nor has the Government demonstrated that the detainees' family members possess more than a *de minimis* privacy interest in the medical records sought. The Government relies on *Favish*, Gov. Br. at 6-7, in which the Supreme Court held that "FOIA recognizes surviving family members' right to personal privacy with respect to their close relative's death-scene images." 541 U.S. at 170. But the holding in *Favish* was narrow: it applied only to "death-scene images" or other "graphic details," *id.* at 170-71, and was "intended to *permit* family members to assert their own privacy rights against public intrusions." *Id.* at 167 (emphasis added). But here, by contrast, the Government does not allege, much less show, that the content of the medical records at issue here is "graphic," or includes "death-scene images" of the kind that resulted in a significant privacy interest in *Favish*.[2] And even if the records fell within the ambit of *Favish*, the Government has identified no family members of deceased detainees who have asserted a privacy interest in the nondisclosure of these records on privacy grounds.[3] The Government's assertion of the privacy interests of the detainees' family and relatives accordingly fails.

---

[2] Of course, to the extent that the Government asserts that specific, graphic portions of the records are exempt from disclosure, FOIA requires it to claim an exemption and produce the "reasonably segregable" portions of the records. 5 U.S.C. § 552(b). *See, e.g., Hopkins v. U.S. Dep't of Hous. and Urban Dev.*, 929 F.2d 81, 85-6 (2d Cir. 1991); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) ("This rule of segregation applies to all FOIA exemptions.").

[3] Instead, family members of deceased detainees would in all likelihood welcome disclosure of the records because, in Plaintiff's experience, many families are in the dark as to the circumstances of their loved one's death and, at least in some cases, may be able to bring a wrongful death lawsuit based upon evidence of wrongdoing contained in the records and uncovered through an investigation. Wessler Decl. ¶ 29.

In the end, the Government has not substantiated *any* privacy interest in the medical records at issue beyond the generalized argument that medical records are always imbued with an expectation of confidentiality. But that is not, as set forth herein, enough: because FOIA exemptions, "[c]onsistent with FOIA's purposes" are to be "narrowly construed," *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 355-56 (2d Cir. 2005), the Government has failed to bear its burden of showing more than a *de minimis* privacy interest would be implicated by disclosure of the medical records at issue.

B.    Disclosure Would Serve the FOIA's Public Interest Purpose.

Moreover, even if the Court concludes that the Government has met its burden to show a cognizable privacy interest, the medical records Plaintiff is seeking would unquestionably inform the public "about what their government is up to." *Reporters Comm.*, 489 U.S. at 773. The public interest is therefore substantial and weighs heavily in favor of disclosure.

Plaintiff is an investigative journalist seeking to gather information and records about what is indisputably one of the core functions of the USMS: to provide for the care and custody for approximately 50,000 individuals charged with federal crimes on a daily basis. Wessler Decl. ¶¶ 1-3. Defendant USMS elects to fulfill its obligation in large part by holding 80% of the detainees in its custody in state, local and private prisons and jails pursuant to contracts and other agreements. *Id.* Cognizant that it must, *inter alia*, provide detainees in its custody with food and adequate medical care and ensure that they are housed in a safe and humane manner, the agency negotiates contracts (or other types of agreements) that require its partner facilities to fulfill those obligations and that permit the USMS to access records related to its detainees and perform periodic inspections. *Id.* ¶ 5. However, audits by the Department of Justice Inspector General have identified serious deficiencies in USMS practices with respect to monitoring and oversight

9

of those facilities, including the failure to independently assess the medical care provided to detainees who died in its custody. *Id.* ¶¶ 4-5.

The public interest that Plaintiff seeks to vindicate is therefore crystal clear: he seeks to shed light on the question of whether detainees in USMS custody are being provided with adequate medical care, and if they are not, whether the USMS has taken adequate steps to remedy the problem. *See Reporters Comm.*, 489 U.S. at 766 n. 18 ("[M]atters of substantive law enforcement policy . . . are properly the subject of public concern."). As evidenced by extensive news coverage in recent years of issues related to the treatment of prisoners and detainees, this is an area of significant public concern. *See* Wessler Decl. ¶ 28.

Indeed, for proof of the public interest furthered by an investigation of the USMS, the Court need look no further than a very similar investigation Plaintiff conducted in 2015 and 2016 into inmates in the custody of the Bureau of Prisons ("BOP") who died while being held in private prison facilities. *Id.* ¶¶ 7-8. Plaintiff reviewed extensive records produced by the Government pursuant to a FOIA request and examined the BOP's practices with respect to the private prisons that hold BOP inmates; his reporting documented serious and widespread problems in the medical care provided in such facilities. *See id.* ¶¶ 7-23. And, in addition to its importance in shedding light on the BOP, Plaintiff's investigation was also part of a significant body of reporting, from news outlets including *The New York Times*, and scholarship, from nonprofits such as Human Rights Watch, surrounding issues of care and treatment (including medical care) in America's prisons and jail. *Id.* ¶ 28.

Set against the significant public interest, as set forth above, in investigating the circumstances in which detainees have died in USMS custody, the Government's insistence that disclosure here would serve no public interest rings hollow. Contrary to the Government's

suggestion that Plaintiff cannot show that his request will serve the public interest because "USMS did not provide the medical care at issue," Gov. Br. at 8, the "mere fact that the records pertain to an[other] individual's activities does not necessarily qualify them for exemption [pursuant to Exemption 7(C)]. Such records may still be cloaked with the public interest if the information would shed light on agency action." *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 894-95 (D.C. Cir. 1995). Indeed, "obtaining information to act as a 'watchdog' of the government is a well-recognized public interest in the FOIA context." *Baltimore Sun v. U.S. Marshals Serv.*, 131 F. Supp. 2d 725, 729-30 (D. Md. 2001). For that reason, courts have recognized that the oversight and monitoring of agency action, even where the records at issue provide information about the identities or actions of third parties, serves a valid public interest purpose within the ambit of Exemptions 6 and 7(C). *See, e.g.*, *Dep't of State v. Ray*, 502 U.S. 164, 178 (1991) (public interest in "knowing whether the State Department has adequately monitored Haiti's compliance with its promise not to prosecute returnees"); *People for the Ethical Treatment of Animals v. Nat'l Inst. of Health, Dep't of Health & Human Servs.*, 745 F.3d 535, 542-43, 544-45 (D.C. Cir. 2014) (public interest in how National Institutes of Health decides whether to investigate complaints of animal abuse and misappropriation of research funds and how it conducts investigations); *Elec. Frontier Found. v. Office of the Dir. of Nat. Intelligence*, 639 F.3d 876, 887 (9th Cir. 2010) ("There is a clear public interest in public knowledge of the methods through which well-connected corporate lobbyists wield their influence."); *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1232 (D.C. Cir. 2008) (public interest in determining whether Department of Agriculture "is catching cheaters and lawfully administering its subsidy and benefit programs"); *Int'l Bhd. of Elec. Workers Local Union No. 5 v. U.S. Dep't of Hous. and Urban Dev.*, 852 F.2d 87, 91 (3d Cir. 1988) (concluding

that there exists a "strong [public] interest in determining whether HUD is doing the job Congress has directed it to do" with respect to Davis-Bacon Act violations); *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 264 (D.C. Cir. 1982) (holding that, under Exemption 7(C), "the public has a singularly strong interest in disclosure of consultants' conflicts of interest"); *Lardner v. U.S. Dep't of Justice*, 2005 WL 758267, at *18 (D.D.C. Mar. 31, 2005) (holding that public interest in identifying those who are able to exert influence on the presidential pardon power outweighed modest privacy interest).

Here, the public interest served by disclosure of the records sought by Plaintiff falls squarely within the FOIA's central purpose to "open agency action to the light of public scrutiny." *Rose*, 425 U.S. at 361. As the Supreme Court held in *Reporters Committee*, "FOIA's central purpose is to ensure that the Government's activities be opened to the sharp eye of public scrutiny, not that information about private citizens that happens to be in the warehouse of the Government be so disclosed." 489 U.S. at 774. That dichotomy is instructive here: although Plaintiff is seeking records that pertain to private citizens, those records did not end up in the Government's possession through mere happenstance. Rather, what the medical records depict – the treatment of federal detainees in USMS custody – is a core function of the agency.

Moreover, the Government's startling assertion that the role of the USMS is "second-order" does not withstand scrutiny. *See* Gov Br. at 8. As the USMS states prominently on its website, it is ultimately responsible for care and custody of the prisoners it detains and, in order to fulfill those duties, it "provides medically necessary health care to prisoners in its custody" and "annually review[s] state, local and private detention facilities that house federal prisoners." *Fact Sheet: Prisoner Operations,* United States Marshals Service (last visited August 1, 2018), https://www.usmarshals.gov/duties/factsheets/prisoner_ops.pdf. To contend that medical records

pertaining to detainees that have died in USMS custody do not reflect upon the agency's performance of its statutory duties simply blinkers reality.

Indeed, if credited, the Government's argument would create a dangerous precedent. Federal law enforcement agencies responsible for the care and treatment of individuals in their custody would, merely by enlisting state, local and private facilities pursuant to a contract or other agreement to hold those detainees, be able to evade the scrutiny of FOIA for critically important treatment records even where, as here, the records are certainly within the Government's possession and control. Indeed, it bears emphasis that the Government collects the medical records of USMS detainees that have died in such facilities – presumably in order to ensure that USMS detainees are receiving adequate medical care, as required by law – even as it insists that the records do not reflect upon the USMS's performance of its statutory duties. *See* Day Decl. ¶ 13. The Government's position is, then, inconsistent, nonsensical, and ultimately untenable as a matter of law.

Finally, Plaintiff has shown that the particular records withheld by the Government – medical records, including lab reports, test results, and notes from doctors and nurses, as well as coroner's reports and autopsy reports – are critical to advancing the public interest served by disclosure. As described above and detailed in the Plaintiff's Declaration, filed herewith, the investigative methodology that Plaintiff utilized in his recent reporting on deaths of BOP inmates is fully applicable here. *See* Wessler Decl. ¶¶ 7-20. In the BOP case, Plaintiff obtained medical records and other documents through a FOIA request[4] and, working with a team of medical

---

[4] Plaintiff's FOIA request of the BOP was very similar to the request he submitted to the USMS in this case. Wessler Decl. ¶ 24. After bringing a lawsuit to compel the BOP to turn over responsive records, he received the full medical files in the BOP's possession, without privacy withholdings like those asserted here. *Id*. ¶¶ 8-9.

doctors, reviewed the medical records of detainees that had died in BOP custody. *Id*. ¶¶ 9-10. The doctors were able to evaluate the medical care that had been provided to many of the detainees that died, and to draw conclusions regarding whether the care that was provided met recognized medical standards. *Id*. ¶¶ 10-12.

However, as Plaintiff learned during his investigation into deaths of BOP detainees, having a complete medical file is critically important to this methodology. Although the BOP (under circumstances almost identical to those here) produced medical records without any withholding on the privacy grounds asserted here, certain files were nevertheless incomplete. *Id*. ¶¶ 12-13. In those instances, the doctors whom Plaintiff consulted were unable to draw any meaningful conclusions about the medical care that had been provided, and Plaintiff was therefore unable to report on those deaths. *Id*. ¶ 14. Here, Plaintiff has again asked doctors to review the partial files produced thus far by the USMS. But, absent the lab reports, test results, notes and other materials currently being withheld by the USMS, these doctors have informed Plaintiff that the files do not contain enough information to allow for a meaningful review of the care that was provided to the deceased prisoners, to draw any conclusions about whether the care was adequate under the circumstances, or in many cases to even discern a cause of death. *Id*. ¶¶ 26-27. Thus, without access to the medical records at issue here, there is no way for Plaintiff to meaningfully evaluate how the USMS is treating those whom it detains. *Id*. ¶¶ 28-29.

Moreover, by examining the medical records of individual BOP detainees who died, Plaintiff was able to shed light on the BOP's performance of its statutory duties. For example, Plaintiff published news stories detailing the deaths of two detainees in a single facility in Texas that were caused by repeated failures by the medical staff – failures that were apparent to the BOP long before the two men died. *Id*. ¶¶ 17-20. Likewise, by reviewing numerous medical

files, Plaintiff was able to show in the aggregate how frequently the use of poorly-trained medical staff had contributed to premature deaths of prisoners in BOP custody. *Id.* ¶ 21.

Plaintiff's investigation of the BOP, and the fact that he was able to "shed light" on the private prison facilities in which the BOP was placing prisoners in its custody, thus contributed to the public policy debate ongoing then and now. Plaintiff ultimately wrote nine stories for *The Nation*, and reported a radio documentary for the public radio show, Reveal, which garnered significant public attention. *See* Seth Freed Wessler, Special Investigation: Dying in Private Prisons, The Nation, https://www.thenation.com/special/private-prison-deaths/ (last visited August 3, 2018); Seth Freed Wessler and Stan Alcorn, Sick on the Inside, Reveal from the Center for Investigative Reporting, https://www.revealnews.org/episodes/sick-on-the-inside-behind-bars-in-immigrant-only-prisons/ (last visited August 3, 2018). Indeed, Plaintiff's reporting arguably contributed to the Government's decision, at the time, to phase out the use of private prisons, which was (along with the reversal of that reversal some months later by the current administration) a matter of great public concern. *Id.* ¶ 22-23 (citing news coverage in, *inter alia*, *The New York Times*, *The Washington Post*, NPR, *The Wall Street Journal*, and press releases from several nonprofit organizations).

Plaintiff has, accordingly, not only established a strong public interest in the information he has requested, consistent with FOIA's purpose to "open agency action to the light of public scrutiny," *N.Y. Pub. Interest Research Grp.*, 249 F. Supp. 2d at 331; he has also demonstrated with precision the important ways in which the medical records at issue will advance that public interest. In sum, the public interest in disclosure far outweighs the *de minimis* privacy interest on which the Government relies to justify its withholding, and this Court should so hold.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Partial Summary Judgment and order Defendants to produce the withheld medical records.

Respectfully submitted,

/s/ J. David Pollock
J. David Pollock
Lawrence S. Lustberg
GIBBONS P.C.
1 Gateway Center
Newark, NJ 07102
(973) 596-4500 (tel)
(973) 596-6285 (fax)
jpollock@gibbonslaw.com