UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------

SETH FREED WESSLER,

                          Plaintiff,

        -against-

UNITED STATES DEPARTMENT OF JUSTICE, and UNITED STATES MARSHALS SERVICE,

                        Defendants.

------------------------------------------------------------------------

17-Cv-976 (SHS)

OPINION

SIDNEY H. STEIN, U.S. District Judge.

      Seth Freed Wessler, a nationally published investigative reporter, has commenced this action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking certain records held by the Department of Justice and the United States Marshals Service ("USMS" or "Marshals"). Wessler seeks documents regarding the conditions of confinement for federal pretrial detainees held in state, local, and private prison facilities with which USMS contracts to house those detainees. (*See* Compl., ECF No. 1.) According to a declaration submitted by defendants, "USMS is responsible for the custody of federal pretrial detainees" but it "does not own or operate [] the facilities in which USMS detainees are housed." (Decl. of Katherine Day, Esq. dated July 3, 2018, ¶ 12.) Rather, it enters into contracts with (1) private facilities, (2) state or local facilities, and (3) in the case of federal facilities, the Bureau of Prisons ("BOP").

      The complaint alleges that in 2015 approximately 60 percent of the prisoners in USMS custody were held in state or local facilities; 20 percent were held in privately-operated facilities; and 20 percent were held in federal BOP facilities. (Compl. ¶ 10.) By 2018, according to

1

USMS's website, those numbers were 65 percent, 17.5 percent, and 17.5 percent, respectively. United States Marshals Service, *Fact Sheet: Prisoner Operations* (April 3, 2019).[1]

Wessler alleges – and cites a 2013 DOJ Inspector General ("DOJ-IG") report in support – that the oversight that the Marshals exercise over the care of inmates while in private, state, and local facilities has been "inconsistent," "cursory," and that problems "routinely go uncorrected." (Compl. ¶ 2.) In the complaint, he "seeks information and records regarding deaths, suicides, violence, disturbances and other major incidents" in facilities under contract with USMS. (*Id.* ¶ 3.) After he exhausted his administrative remedies in connection with his FOIA request to USMS, *see* 5 U.S.C. § 552(a)(6)(C)(i), Wessler brought this action.

Following extended negotiation and multiple conferences with this Court, the parties stipulated to a procedure governing defendants' production of documents. (*See* Stipulation and Order, ECF. No. 55.) They agreed in that stipulation to "litigate as a threshold matter" whether the "detainee medical information held by USMS" is "categorically exempt from disclosure pursuant to Exemptions 6 and 7(C)." (*Id.* ¶ 7.) The parties have now done just that; i.e., they have cross-moved on the issue of whether plaintiff's request for the medical records of federal pretrial detainees who died in the custody of the Marshals falls under Exemptions 6 and 7(C) of FOIA. Defendants contend that those records are exempt from disclosure pursuant to those exemptions, and therefore USMS is not required to disclose the medical records to plaintiff. Wessler urges that the records are not exempt from disclosure, and therefore USMS is required to produce them.

---

[1] *Available at* https://www.usmarshals.gov/duties/factsheets/prisoner_ops.pdf.

For the reasons that follow, Wessler's motion for partial summary judgment in his favor is granted and defendants' motion is denied.

I. Discussion

"FOIA strongly favors a policy of disclosure… and requires the government to disclose its records unless its documents fall within one of the specific, enumerated exemptions set forth in the Act." *National Council of La Raza v. Department of Justice,* 411 F.3d 350, 355 (2d Cir. 2005) (first citing *Halpern v. FBI*, 181 F.3d 279, 286 (2d Cir. 1999) and then citing *Tigue v. United States Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002)). Consistent with FOIA's underlying purposes, courts construe these exemptions narrowly. *National Council of La Raza*, 411 F.3d at 355-56 (first citing *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) and then citing *Local 3, Int'l Bhd. of Elec. Workers v. NLRB*, 845 F.2d 1177, 1180 (2d Cir. 1988)). The government bears the burden of showing "that any claimed exemption applies." *National Council of La Raza*, 411 F.3d at 356. (first citing *Perlman v. United States DOJ*, 312 F.3d 100, 105 (2d Cir. 2002) and then citing *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 258 (D.C. Cir. 1982)). Courts review the government's decision to withhold or redact information *de novo*. 5 U.S.C. § 552(a)(4)(B).

In the Second Circuit, the procedure for resolving motions for summary judgment in FOIA cases is as follows:

> In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA. Affidavits or declarations supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden. Affidavits submitted by an agency are accorded a presumption of good faith; accordingly… if the agency's submissions are adequate on

3

> their face… the district court may forgo discovery and award summary judgment on the basis of affidavits.
>
> In order to justify discovery once the agency has satisfied its burden, the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate.

*Carney v. United States Dep't of Justice,* 19 F.3d 807, 812 (2d Cir. 1994) (citations, internal footnote, and quotation marks omitted).

In this case, each side filed a declaration in support of its motion for summary judgment. Defendants submitted a declaration from Katherine Day, an associate general counsel and the "Freedom of Information/Privacy Act Officer" with USMS. (Day Decl., ECF No. 41.) Plaintiff submitted his own declaration. (Decl. of Seth Freed Wessler dated Aug. 3, 2018, ECF No. 49.)

In his declaration, plaintiff sets forth the history of his work in this area as well as his perception of where the public interest lies. Specifically, in addition to the 2013 DOJ-IG report cited in the complaint and referred to above, Wessler cites a DOJ-IG report from 2017 concerning a specific private detention facility with which USMS had contracted. In that report, DOJ's Inspector General found, according to Wessler, "vast deficiencies in USMS's oversight practices," (*id.* ¶ 5,) and the Inspector General noted that some of the problems identified in his report "appear to be inherent in USMS's overarching continuous monitoring approach." (Office of the Inspector Gen., U.S. Dep't of Justice, Audit of the United States Marshals Service Contract No. DJJODT7C0002 with CoreCivic, Inc., to Operate the Leavenworth Detention Center Leavenworth, Kansas (2017)[2] at 14.)

Wessler then points to very similar research and reporting he had done related to the treatment of prisoners in private prison facilities contracted by the BOP – not USMS – to hold

---

[2] *Available at* https://oig.justice.gov/reports/2017/a1722.pdf.

noncitizens convicted of federal crimes.  (Wessler Decl. ¶ 7.)  During the course of that reporting, Wessler brought suit to compel the BOP to comply with his FOIA requests, and he states he "received the full BOP medical files of people who had died while held as inmates in BOP contract facilities."  (*Id.* ¶ 9.)[3]  Wessler states that he consulted with a team of doctors in order to understand the records provided to him by the BOP, and together they concluded that "[i]n at least 25 of the 103 deaths for which the BOP provided complete or nearly-complete medical files… inadequate medical care… likely contributed to a premature death."  (*Id.* ¶ 16.)  However, there were some cases where the BOP could not provide complete documentation, and the doctors were not able to evaluate meaningfully the medical care that had been provided.  (*Id.* ¶¶ 13-14.)  Here, Wessler consulted with the same team of doctors to review the sample incomplete records provided by USMS, and he states that the doctors told him that the incomplete records "do not contain enough information to allow for a meaningful review of the medical care that was provided to the deceased prisoner." (*Id.* ¶ 26.)

The Day declaration advocates for withholding of the medical records and largely previews the defendants' arguments in their memorandum of law, discussed below.

### A. FOIA Exemptions 6 and 7(C)

Exemption 6 of FOIA states that FOIA's disclosure requirements do not apply to matters that are "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 7(C) provides that FOIA's disclosure requirements do not apply to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement

---

[3] *See Wessler v. Federal Bureau of Prisons, et al.*, No. 14 Civ. 5627 (PAE).

records or information… (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7).  If information falls under either exemption, the government may withhold it.  Otherwise, the information must be disclosed.

The two exemptions are closely related.  Exemption 7(C) has been held to be "somewhat broader" than Exemption 6.  *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 756 (1989).  Once it is determined that Exemption 7(C) covers a certain area, courts analyze the issue under Exemption 7(C) rather than under Exemption 6, the narrower exemption.  *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011); *see also Reporters Comm.*, 489 U.S. at 762, n.12 ("Because Exemption 7(C) covers this case, there is no occasion to address the application of Exemption 6.").  The parties do not dispute that the medical records at issue here were "compiled for law enforcement purposes" and that Exemption 7(C) is the relevant exemption.  Therefore, the Court's analysis will proceed under Exemption 7(C).

Under Exemption 7(C), the Court must weigh the privacy interests implicated in the records at issue against the public interest in their disclosure.  *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171 (2004) (citing *Reporters Comm.*, 489 U.S. at 762).

> Where the privacy concerns addressed by Exemption 7(C) are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure.  First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake.  Second, the citizen must show the information is likely to advance that interest.  Otherwise, the invasion of privacy is unwarranted.

*Favish*, 541 U.S. at 172.  "[The privacy] interest need only be more than *de minimis* to trigger the application of the balancing test to determine whether disclosure is permitted under FOIA." *Associated Press v. U.S. Dep't of Def.*, 554 F.3d 274, 286 (2d Cir. 2009).

### B. Privacy Interests

There are two categories of privacy interests implicated by the release of the medical records at issue here – (1) the detainees' own, and (2) those of the decedent detainees' surviving family members.

Medical records most certainly implicate a protected privacy interest; indeed, "medical files" are specifically listed in Exemption 6 as exempt from disclosure if their release "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). However, it is also true that such a personal privacy interest fades with the death of the subject of the medical records. How much that interest fades is disputed by the parties. Plaintiff maintains that the privacy interest that remains post-death is *de minimis*. The government argues that it is stronger than that.

The U.S. Court of Appeals for the D.C. Circuit, which writes frequently on FOIA issues, has long held that with respect to FOIA, "the death of the subject of personal information does diminish to some extent the privacy interest in that information, though it by no means extinguishes that interest." *Schrecker v. U.S. Dep't of Justice*, 254 F.3d 162, 166 (D.C. Cir. 2001). The Department of Justice has specifically recognized that "[a]n individual who is deceased has greatly diminished personal privacy interests in the context of the FOIA." U.S. Dep't of Justice, Guide to the Freedom of Information Act: Exemption 6, at 37 (2014).[4] "Death clearly matters," and "[a] court balancing public interests in disclosure against privacy interests must therefore make a reasonable effort to account for the death of a person on whose behalf the

---

[4] *Available at* https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/exemption6.pdf.

government invokes exemption 7(C)." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 33 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999).

In sum, the decedents' privacy interest in their own medical records, although greatly diminished, is "by no means extinguishe[d]," *Schrecker*, 254 F.3d at 166, and presumably remains more than *de minimis*.

At the same time, the decedents' surviving family members also have privacy rights in these records. The Supreme Court held in the context of a FOIA request seeking photographs of the body of Vince Foster, deputy counsel to President Clinton, that "FOIA recognizes surviving family members' right to personal privacy with respect to their close relative's death-scene images." *Favish*, 541 U.S. at 170. The Justices then proceeded to balance the Foster family's privacy interests with the public interest in disclosure, ultimately finding that the family's privacy interests overcame any remaining public interest in the events surrounding Foster's suicide. *Id.* at 171-75.

The Court agrees with defendants that the decedents' family members have a privacy interest in the medical and autopsy records at issue here, even if the records do not depict graphic death scene images as in *Favish*. This is consistent with the broad policy that Congress "intended to permit family members to assert their own privacy rights against public intrusions long deemed impermissible under the common law and in our cultural traditions." *Favish*, 541 U.S. at 167. However, the evidence in this action to date – which is so far unrebutted – is that in Wessler's past reporting on medical neglect in prisons, the families of the deceased have "expressed gratitude" when Wessler "contacted them in the process of investigating and/or before publishing stories about their relative." (Wessler Decl. ¶ 29.)

Even when acknowledging that a privacy interest is retained by family members in these records, the Court is obligated to weigh that against the public interest in disclosure.  In *Mobley v. C.I.A.*, 924 F. Supp. 2d 24, 70 (D.D.C. 2013), the court noted that "the D.C. Circuit has repeatedly held that the close relatives of a deceased person retain a certain amount of privacy interests after the decedent has passed away."  The *Mobley* court ruled that the information at issue was properly withheld because the government had "established at least a moderate privacy interest protected by Exemption 7(C)" while the plaintiff had "not offered any public interest that disclosure would serve."  *Id.* at 71.  However, unlike in *Mobley*, here there is a significant – perhaps even compelling – public interest served by disclosure of these medical records which strongly offsets the "moderate privacy interest" protected by Exemption 7(C).

C.  **Public Interest**

Turning to the public interest served in the release of these medical records, the Court finds that it is significant.  The public has a right to know the circumstances under which people die while detained in the pretrial custody of USMS.

Most importantly, as described above, audits from DOJ's Inspector General have already identified serious deficiencies with respect to the very topic Wessler is investigating – the monitoring and oversight of state, local, and private facilities by USMS.  Indeed, Wessler has already undertaken a similar investigation regarding inadequate medical care in prisons, but in the context of facilities the BOP contracts with, not facilities that USMS contracts with.  That topic certainly garnered public interest, as evidenced in part by the fact that in 2016 the DOJ directed the BOP to phase out its use of privately-operated prisons[5] and by the fact that articles

---

[5] *See* Memorandum from Sally Q. Yates, Deputy Attorney General, U.S. Dep't of Justice, to Acting Director, Federal Bureau of Prisons, "Reducing Our Use of Private Prisons" (August 18, 2016), *available at*

9

have been published on the topic by national media outlets, including Reuters,[6] The New York Times,[7] and The Washington Post.[8]  Wessler asserts, and the government has not put forth any rationale to contradict him, that he and his team of doctors need the full medical records to evaluate properly the medical care the detainees received at these prisons – as they did with the BOP reporting. (Wessler Decl. ¶ 26.)  Therefore, the Court finds that there is significant public interest in the release of these records.

Investigative reporting on topics such as this, far from impeding the public interest, actually enhances it.  *See New York Times Co. v. United States*, 403 U.S. 713, 717 (1971) (Black, J., concurring) ("In the First Amendment the Founding Fathers gave the free press the protection it must have to fulfill its essential role in our democracy… to serve the governed, not the governors… [and] bare the secrets of government and inform the people.").  This was precisely the role of the press envisioned by the Congress when enacting FOIA.  *See* S. Rep. No. 813, 89th Cong., 1st Sess. (1965) ("Although the theory of an informed electorate is vital to the proper operation of a democracy, there is nowhere in our present law a statute which affirmatively provides for that information."); 112 Cong. Rec. 13007 (June 20, 1966) (statement of Rep. Moss) ("Our Constitution … guarantee[d] free speech and a free press… those wise men who wrote the document – which was then and is now a most radical document – could not have intended to give us empty rights.  Inherent in the right of free speech and of free press is the right to know.").

---

https://www.justice.gov/archives/opa/file/886311/download.  This directive has since been rescinded.  *See* Memorandum from Jefferson B. Sessions III, Attorney General, U.S. Dep't of Justice, to Acting Director, Federal Bureau of Prisons, "Rescission of Memorandum on Use of Private Prisons" (Feb. 21, 2017), *available at* https://www.bop.gov/resources/news/pdfs/20170224_doj_memo.pdf.
[6] *See* Julia Edwards, *U.S. to Phase Out Federal Use of Private Prisons*, REUTERS, Aug. 18, 2016.
[7] *See* Charlie Savage, *U.S. to Phase Out Use of Private Prisons for Federal Inmates*, N.Y. TIMES, Aug. 19, 2016.
[8] *See* Matt Zapotosky & Chico Harlan, *Justice Department Says it Will End Use of Private Prisons*, WASH. POST, Aug. 18, 2016.

And while the fact that the BOP – not USMS – voluntarily released its full medical records to Wessler does not waive USMS's right to seek to withhold them, *see Mobley v. CIA*, 806 F.3d 568, 583 (D.C. Cir. 2015) ("Disclosure by one federal agency does not waive another agency's right to assert a FOIA exemption."), it is certainly relevant that the BOP did not view these types of records as exempt from disclosure under FOIA.

The government argues that no public interest is served by disclosure because "the medical care and day-to-day oversight of prisoners was conducted by state, local, or private facilities." (Def.'s Mem., ECF No. 42 at 8.) However, that blinks at the entire point of this exercise. The asserted purpose of Wessler's reporting is to determine whether USMS failed to do what it is required to do – monitor the care provided to the detainees in these state, local, and private facilities. That is a core responsibility of USMS, as set forth on USMS's own website. United States Marshals Service, *Fact Sheet: Prisoner Operations* (April 3, 2019)[9] ("The Marshals Service is responsible for ensuring medically necessary health care is provided to prisoners in its custody.").

## II.     Conclusion

The decedents and their surviving family members indeed have privacy interests in the medical records that Wessler seeks. However, it is also true that the public has a strong interest in understanding the operations of its government. That interest is particularly compelling when the information sought concerns the circumstances under which pretrial detainees – individuals presumed to be innocent under the law – died while in the custody of the Marshals. Balancing the privacy interests of the decedents and their families against the strong public interest in the

---

[9] *Available at* https://www.usmarshals.gov/duties/factsheets/prisoner_ops.pdf.

11

records' disclosure, this Court finds that the production of the documents does not constitute an unwarranted invasion of personal privacy. Accordingly, defendants' motion for partial summary judgment is denied and plaintiff's cross-motion for partial summary judgment is granted.

Dated: New York, New York
April 10, 2019

*[signature]*

Sidney H. Stein, U.S.D.J.